[Civ. No. 2487. Fourth Dist. Oct. 7, 1941.]

GERALDINE STEVENSON, a Minor, etc., et al., Appellants,
v. GRANT M. FLEMING, Respondent.

[Civ. No. 2488. Fourth Dist. Oct. 7, 1941.]

LUCINDA RUBIDOUX, Appellant, v. GRANT M.
FLEMING, Respondent.

Gibson, Dunn & Crutcher, Philip C. Sterry, Taylor, Kolliner & Bolton and Joseph D. Taylor for Appellants.

Kelley & Hews and Loyal C. Kelley for Respondent.

MARKS, Acting P. J.—These are appeals from judgments in favor of defendant in actions to recover damages suffered

in an automobile collision which occurred shortly after eleven o'clock on the night of August 19, 1939, in the intersection of Tenth and Lime Streets in the city of Riverside. Tenth Street runs east and west and Lime Street north and south. Both streets were paved and were about 40 feet wide between curbs. The cases were consolidated for trial and have been consolidated on appeal.

Plaintiffs alleged negligence of defendant in general terms. Defendant denied his negligence and alleged: (1) that the accident was caused solely by the negligence of Raymond Meyers, who was driving the car in which Geraldine Stevenson and Lucinda Rubidoux were riding as guests, and (2) unavoidable accident. Other special defenses interposed by defendant were abandoned. There is no suggestion of contributory negligence on the part of plaintiffs.

As any negligence on the part of Meyers could not have been imputed to plaintiffs, the only ground upon which the verdicts for defendant could have been based must have been either that the negligence of Meyers was the sole proximate cause of the accident or that Fleming was not guilty of any negligence that concurred with that of Meyers in causing the accident or proximately contributing to it.

Plaintiffs urge two grounds for a reversal of the judgment: first, that there is no evidence sufficient to sustain it and, second, erroneous instructions which they urge were prejudicial to them. Both arguments involve an analysis of the evidence.

The intersection of Tenth and Lime Streets is badly obstructed. No clear view of either street can be had from the other very many feet back from the exterior lines of the intersection. Lime Street rises on a slight grade to the north between Eleventh and Tenth Streets. There is no material change of grade on Tenth Street.

Kenneth W. Hadley, a witness called by plaintiffs, was sitting on the lawn in front of a house at the southeast corner of the intersection and described the accident in detail. We find the following in his testimony:

"Well, I was sitting in the front yard of Mrs. Walters' and waiting for a car, and about a block and a half down the street I saw a Chevrolet—I found out later it was a Chevrolet—coming—going east—coming east on 10th, and I kind of watched a little carefully. It was on the right side

of the street, and had its lights burning. I kind of watched kind of close; I thought that that might be it. A little later I saw this other car coming north on Lime, and saw it about half a block down the street, and it was also on the right side of the road, and the lights were burning; and as it neared the corner, well, I saw there was going to be a wreck unless one of the cars put on the brakes.''

He testified further that both cars were traveling between thirty and thirty-five miles per hour; that neither slowed up at all before the collision; that the Meyers car entered the intersection first; that the front of the Fleming car struck the center of the right-hand side of the Meyers car at a point about five feet east and two or three feet south of the center of the intersection; that the Meyers car swerved a little to its left just before the collision; that after the collision it turned around and came to rest headed west, against the north curb of Tenth Street; that ''I saw a woman (Mrs. Rubidoux) fall out of the car, she bounced a couple of times on the pavement and hit her head on the curb and ended up by a tree''; that the Fleming car stopped practically where it hit the Meyers automobile.

This is the only witness who was able to give a complete description of the accident and the courses of the two automobiles just preceding it. Hadley was apparently a disinterested witness. It should be unnecessary to say that his evidence points to negligence on the part of both drivers that concurred in causing the accident and, if accepted as true, would have supported a judgment in favor of plaintiffs.

Meyers testified in substance as follows: that on the night of the accident he was driving a 1932 Chevrolet coach; that Mrs. Rubidoux was sitting on the seat beside him and Geraldine Stevenson was sitting on the rear seat; that he was driving east on Tenth Street and was traveling between eighteen and twenty miles per hour on his own right-hand side of the street; that his headlights were illuminated; that when he was about sixty feet west of the intersection he looked to his right and saw the beams of light from a car approaching the intersection from the south on Lime Street; that when he had proceeded about thirty feet he looked to his left for traffic on Lime Street approaching the intersection from the north and saw nothing; that he entered the intersection at about fifteen miles per hour; that ''as I was inside of the

intersection, I looked to my right and seen a car''; that it was about ninety feet away and was traveling about 40 or 45 miles per hour; that it was approaching the intersection at about 45 or 50 miles per hour; that after he was in the intersection he observed the Fleming car about 30 or 35 feet away approaching at about thirty miles per hour; that he increased his speed and swerved to his left; that the front of his car was slightly east of the east curb line of Lime Street when Fleming drove into the right-hand side of it at about its center.

As we will accept the implied finding of the jury of negligence on the part of Meyers, we need not comment on his testimony except to point out that, if believed, it would have supported a finding of negligence on the part of Fleming that concurred with that of Meyers in causing the accident.

Fleming testified in substance as follows: that he was driving a 1930 Studebaker President Eight Sedan north on Lime Street; that the headlights were illuminated and he was on his own right-hand side of the street; that he approached and entered the intersection at a speed of between eighteen and nineteen miles an hour; that when he was seventy-five feet south of the intersection he could see Tenth Street for a distance of seventy-five feet west from the intersection; that he looked west on Tenth Street and saw nothing; that when he was six feet south of the intersection he again looked west on Tenth Street for a distance of at least one hundred feet; that ''there was no automobile that I could see, approaching anyways near the intersection''; that he proceeded into the intersection at about the same speed; that he saw the Meyers car ''for a very brief moment''; that ''it was traveling in a northeasterly direction, coming from my left, and I would say it was at least 15 feet, or maybe 18 feet, from my car when I first saw it''; that at the speed at which he was traveling he could have stopped his car in a distance of ten feet; that the front of his car was 8½ feet south of the center line of Tenth Street when he first saw the Meyers car; that the collision occurred about four feet north and four or five feet east of the center of the intersection; that when he first saw the Meyers car he applied his brakes in an endeavor to stop; that on August 24, 1939, he made and signed a written statement which contained the following:

"As I got to the intersection, I glanced both ways, to right and left, and saw no traffic. I then entered the intersection, headed north on Lime. Just then, without any previous intimation or knowledge of any approaching car from any direction whatsoever, I saw a flash of light, and there, right in front of me, was a car."

F. J. Falkenstein, a guest of Mr. Fleming, who was riding beside him on the front seat of the Studebaker, corroborated Fleming's testimony in many particulars.

The evidence of Fleming, if believed, would have supported an implied finding by the jury of negligence on his part that actively concurred with that of Meyers in causing the accident, had such a finding been made. To look and not to see may be as negligent as not to look at all. While it may be true that Fleming did not actually see the Meyers car approaching the intersection due to the wide corner posts used in the 1930 Studebaker President Sedans which produced a "blind spot" for the drivers, such a corner post could not have obscured the beams of light from the headlights of the Meyers car shining into the intersection as it approached it from the west. Such beams of light should have been a warning of approaching danger to the driver of another car entering the intersection.

Counsel devote much space in their briefs in arguing the question of which driver had the right of way at the intersection under the provisions of section 550 of the Vehicle Code. This question, while important, may not be controlling. A driver, in enforcing his lawful right of way, may violate the provisions of section 510 of the Vehicle Code and may thus be guilty of negligence for which he may be held to be legally responsible.

Plaintiffs complain of four instructions given to the jury which they urge were incorrect and prejudicial.

Defendant's instruction number 30 told the jury that violation of the basic speed law (quoting sec. 510 of the Vehicle Code) "is of no consequence unless it is the maximum cause of the injury found by you to have been suffered by the plaintiffs herein." It is true that this instruction was proposed in proper form by counsel for defendant. We are not concerned with how the instruction was proposed. It is how it was given to the jury that is important. Both the reporter and the trial judge have certified that the word *maximum* was

used in reading the instruction instead of the proper word *proximate,* which was in the instruction as proposed. We are bound by the official record.

Maximum means the greatest possible quantity, amount or degree. It implies the comparison of one thing with another of a lesser degree. We cannot compare the negligence of two automobile drivers in California in order to determine which one was the most negligent and attach liability to him.

Of course the instruction was general in its terms and was not specifically pointed at defendant. However, it could have been pointed to no other because the jury were properly instructed that the negligence of Meyers, the host driver, could not have been imputed to plaintiffs, who were his guests. The instruction was in conflict with other proper instructions on proximate cause.

It has been held many times that incorrect instructions do not always constitute reversible error and that an incorrect instruction may be cured by other correct instructions. The rule that should be applied here is stated in *Soda* v. *Marriott,* 118 Cal. App. 635 [5 Pac. (2d) 675], as follows:

"If a single instruction omits an essential element of the cause, but is a correct declaration of the law so far as it goes, and the omitted element is correctly given in another instruction, the omission will ordinarily be cured thereby. If, however, an essential principle of law is stated to the jury materially incorrect, this prejudicial error will not ordinarily be cured by a correct declaration of the same principle in another instruction. The giving of instructions which are contradictory in essential elements may warrant the reversal of a judgment for the reason that it is impossible to determine which charge controlled the determination of the jury. (*Chidester* v. *Consolidated People's Ditch Co.,* 53 Cal. 56; *Buttrick* v. *Pacific Elec. Ry. Co.,* 86 Cal. App. 136 [260 Pac. 588] ; *Gaster* v. *Hinkley,* 85 Cal. App. 55 [258 Pac. 988] ; *Noce* v. *United Railroads,* 53 Cal. App. 512 [200 Pac. 819].)" (See also, *Akers* v. *Cowan,* 26 Cal. App. (2d) 694 [80 Pac. (2d) 143] ; *Ferguson* v. *Nakahara,* 43 Cal. App. (2d) 435 [110 Pac. (2d) 1091] ; *Pierce* v. *United Gas & Electric Co.,* 161 Cal. 176 [118 Pac. 700] ; *Starr* v. *Los Angeles Ry. Corp.,* 187 Cal. 270 [201 Pac. 599].)

While many other correct instructions were given on proximate cause, we are cited to no other instruction given on proximate cause in connection with section 510 of the Vehicle Code.

■ It is true that defendant's instruction number 39 incorrectly assumed that Meyers was guilty of negligence. This error was harmless, in our opinion, as the jury was instructed that the negligence of Meyers could not have been imputed to the plaintiffs. Further, the negligence of Meyers is seemingly apparent from the record.

■ Defendant's instruction number 18, wherein the jury was told that each party was entitled to the presumption that every person takes ordinary care of his own concerns and that he obeys the law (sec. 1963, subd. 4, Code Civ. Proc.), should not have been given. Such an instruction may be proper under given circumstances in a death case but should not be given in a case where all the parties are alive and testify and all facts are placed before the jury by the testimony of the parties and the witnesses. (*Westberg* v. *Willde,* 14 Cal. (2d) 360 [94 Pac. (2d) 590].) There are cases holding that the giving of such an instruction under the circumstances of those cases lacks sufficient prejudice to cause a reversal of a judgment. (See *Paulsen* v. *McDuffie,* 4 Cal. (2d) 111 [47 Pac. (2d) 709]; *Tuttle* v. *Crawford,* 8 Cal. (2d) 126 [63 Pac. (2d) 1128]; *Stroh* v. *Bauman,* 37 Cal. App. (2d) 241 [99 Pac. (2d) 337].) Under these authorities, it is rather clear that the instruction should not have been given in this case as the parties were living and they and the witnesses described the accident in detail.

■ The trial court gave defendant's instruction number 20 on the theory of unavoidable accident. It is now urged that it was error to give this instruction because the accident could have been avoided by the use of ordinary care; that where the accident was caused by negligence there is no room for the doctrine of unavoidable accident. Of course, speaking generally, this is true. (*D'Avanzo* v. *Manno,* 16 Cal. App. (2d) 346 [60 Pac. (2d) 524]; *Zaferis* v. *Bradley,* 28 Cal. App. (2d) 188 [82 Pac. (2d) 70].) However, the following rule announced in *Pearce* v. *Elbe,* 98 Cal. App. 101 [276 Pac. 389], should be controlling here:

''Here negligence is pleaded in general terms in the complaint. The answer denies it in general terms. The general

denial of the general allegation of negligence permits the defendant to rely upon the defense of unavoidable accident. (*Lehnerts* v. *Otis Elevator Co.* (Mo.) 256 S. W. 819, 822; 45 C. J. 1141, note 52.) The instruction was given by request of defendant and we cannot see how it could be harmful to the plaintiff who in any event had the burden of proving that the collision was occasioned solely by the negligence of the plaintiff [sic] which, of course, would exclude unavoidable accident." (See also, *Sitkei* v. *Ralphs Grocery Co.*, 25 Cal. App. (2d) 294 [77 Pac. (2d) 311].)

 Thus we have here defendant's instruction number 30 which incorrectly announced a principle of law and permitted the jury to compare the negligence of Meyers with that of Fleming insofar as a violation of the provisions of section 510 of the Vehicle Code is concerned. If the members of that body concluded that the negligence of Meyers was greater than that of Fleming they were permitted to return a verdict for defendant. The language of the instruction, "the violation of the law is of no consequence unless it is the maximum cause of the injury found by you to have been suffered by the plaintiffs" permitted the jurors to entirely disregard any negligence on the part of Fleming which concurred with greater negligence of Meyers in causing the accident or which proximately contributed to the accident. This is contrary to the California law and may reasonably explain the verdict of the jury, as no one contends that the evidence fails to point to serious negligence on the part of Meyers. This being true, and under the facts of this case, we must regard the instruction as given to the jury as prejudicially erroneous and as requiring a reversal of the judgment so that this case may be again submitted to a jury, if one be had, under proper instructions.

The judgments are reversed.

Griffin, J., and Morton, J. *pro tem.*, concurred.

Respondent's petition for a hearing by the Supreme Court was denied December 1, 1941.