[Civ. No. 7355.   Third Dist.   Oct. 21, 1947.]

HARVEY L. LaBRANCH, Appellant, v. ARTHUR LeROY SCOTT, Respondent.

Thomas O'Hara for Appellant.

Elliott, Atkinson & Sitton for Respondent.

ADAMS, P. J.—Plaintiff brought this action seeking damages for injuries alleged to have been sustained by him in an automobile accident when he was negligently struck by defendant's automobile while he was crossing a highway on foot. Defendant answered, denied negligence on his part, and alleged contributory negligence on the part of plaintiff. Trial of the cause by a jury resulted in a verdict for defendant, and plaintiff has appealed from the judgment which followed. The only grounds for reversal urged by appellant are that the court

erred in refusing to give one certain instruction proposed by plaintiff, and in giving certain other instructions.

Discussion of these alleged errors calls for some consideration of the evidence. In the presentation of same the rough sketch of the scene of the accident, appearing below, was used by the parties.

The evidence shows that plaintiff, on the day of the accident, was visiting his son who lived on the north side of Ben Ali Avenue in Sacramento County, a short distance west of the Southern Pacific railroad tracks which cross Ben Ali Avenue between 40 and 45 feet west of Auburn Boulevard. Plaintiff left his son's home between 7:30 and 8 p. m., his destination being Gage's gasoline station which was located on the east side of Auburn Boulevard, and is marked "Gage" upon the sketch. His purpose was to secure some stove oil. He was accompanied by his 8-year-old grandson who walked ahead of him, and pulled a little wagon upon which rested a can to be

filled with the oil. The night was dark, and plaintiff was attired in dark clothes and hat, and carried no light of any kind. The roadway was also dark in color. There was a street light at Marconi Avenue and Auburn Boulevard, but no other light except a little from the oil station. There was a blinker light over the highway which flashed red for Ben Ali-Marconi traffic, and yellow for highway traffic on Auburn Boulevard. There was a stop sign on the south side of Ben Ali Avenue, but no stop-and-go sign at any place.

After plaintiff crossed the railroad tracks he proceeded along the north side of Ben Ali Avenue to the highway, and then across the highway toward the oil station as indicated by the dotted line on the sketch, the boy being about 10 feet ahead of him. There is no evidence that between the railroad tracks and the highway there was any sidewalk on Ben Ali Avenue, and no crosswalk was marked on the street where plaintiff crossed. Plaintiff contends that there was a sidewalk on Ben Ali Avenue west of the tracks, but the evidence in this connection, if any at all, is most meager.

Plaintiff testified that when he reached the westerly edge of the highway he stopped and watched for traffic but saw none, so proceeded across; that when he reached the double line in the center of Auburn Boulevard, he looked toward the south and saw the headlights of an approaching car, but thought he had plenty of time to get across, so proceeded toward the oil station, and that when over the middle line of Auburn Boulevard and close to the outer edge thereof, he was struck by defendant's car, rendered unconscious, and sustained the injuries for which he sought compensation.

Defendant testified that he was on his way to Roseville, and traveling in the extreme right lane of the four lanes of Auburn Boulevard, at a speed of about 35 or 40 miles per hour until he saw the blinker lights at the intersection, whereupon, when 200 or 300 yards south of the intersection, he reduced his speed to 30 miles per hour; that it was dark and the intersection area was not clearly discernible, and that he did not see plaintiff until he was about 30 feet from him; that plaintiff was then about two steps across the double line dividing the highway; that plaintiff there appeared to hesitate, then came on again; that defendant put on his brakes, turned sharply to the right, and brought his car to a stop in front of the service station, where it came to rest with but the left rear wheel on the edge of the highway; that plaintiff appeared to walk right into the side of his car, and hit it at the rear

of the left front fender. Testimony of this witness and of a traffic officer who was called to the scene of the accident showed skid marks on the highway for a distance of about 30 feet. They are indicated on the sketch by the heavy line beginning about the south edge of Marconi Avenue and ending in front of the service station.

The instruction proposed by plaintiff and refused by the court, the refusal to give which is relied upon by appellant as reversible error, reads as follows:

"You are instructed that at the time of the happening of the matters here in suit the California Vehicle Code provided as follows:

" 'The driver of a vehicle shall yield the right of way to a pedestrian crossing the roadway within any marked cross-walk or within any unmarked cross-walk at an intersection, except that at intersections where traffic is controlled by traffic controlled signal devices or by police officers, pedestrians shall not cross the roadway against a red or stop signal. Whenever flash red or yellow signals are used and such signal is flashing yellow with rapid intermittent flashes, drivers of vehicles may proceed through the intersection or pass such intersection only with caution.'

"A violation of the vehicle code provisions herein referred to constitutes negligence as a matter of law.

"If you find that the plaintiff, Harvey LaBranch, was walking in the pedestrian cross walk crossing Auburn Boulevard in the Ben Ali-Marconi Avenue intersection across said boulevard before the defendant, Arthur LeRoy Scott, drove his vehicle into said intersection and you find that said defendant violated the Vehicle Code provision above set forth respecting failure to yield the right of way to the plaintiff pedestrian and you find that such violation was a proximate cause of plaintiff's injuries, then you should find for the plaintiff.

"If you find that the defendant failed to proceed through said intersection with caution and that such violation was a proximate cause of plaintiff's injuries, then you should also find for the plaintiff."

The court rejected the proposed instruction as not appropriate as there was not an unmarked crosswalk within the definition of the statute.

At plaintiff's request the court did give instructions in the language of sections 86, 83 and 85 of the Vehicle Code, defining "intersection," "roadway" and "crosswalk," the definition of crosswalk being:

"(a) That portion of a roadway ordinarily included within the prolongation or connection of the boundary lines of sidewalks at intersections where the intersecting roadways meet at approximately right angles, except the prolongation of any such lines from an alley across a street.

"(b) Any portion of a roadway distinctly indicated for pedestrian crossing by lines or other markings on the surface."

We think that the trial court did not err in refusing to give the rejected instruction if for no other reason than that it assumed that plaintiff was crossing the street within either a marked crosswalk or an unmarked crosswalk at an intersection, since the evidence fails to show that such was the case. It was stipulated that there was no marked pedestrian lane or crosswalk, and plaintiff's testimony which is relied upon as showing that there was an unmarked crosswalk was as follows:

"Q. Now, about how far away from this intersection with Auburn Boulevard was the residence that you were staying at—3128 Ben Ali Avenue? A. About how far away was it?

"Q. Yes. A. Oh, I imagine two blocks.

"Q. About two blocks away? A. I imagine.

"Q. And you would walk down the sidewalk or path? A. Yes.

"Q. On which side of the street? A. On the north side of the street, facing traffic.

"Q. You were walking east? A. I was going east.

"Q. And you were on the north side of the street? A. North side of the street.

"Q. That is the same side of the street as the house you were stopping at was located on? A. Yes, yes.

.    .    .    .    .    .    .    .    .    .    .    .    .

"Q. Now, as you come to the railroad tracks, there is no sidewalk or pathway, is there? A. No.

"Q. And did you cross over those tracks? A. Yes."

On cross-examination he testified:

"Now, as you came easterly on Ben Ali Avenue, I understand that you were traveling on the northerly side walking along the northerly edge? A. I was.

"Q. So that the traffic which was going westerly on Ben Ali was coming on your side of the road? A. Yes.

"Q. And you were walking in the gravel area? A. Yes."

There was no evidence of the existence of a sidewalk on either side of Marconi Avenue.

Appellant relies upon *Blanton* v. *Curry*, 20 Cal.2d 793, 802 [129 P.2d 1], and cases there cited, as authority for his con-

tention that he was crossing the highway on a crosswalk. But the factual situations presented in those cases are not comparable. The evidence in this case cannot be said to establish, as matter of law, that the place where plaintiff crossed the highway was the "portion of a roadway ordinarily included within the prolongation or connection of the boundary lines of sidewalks at intersections." There is no evidence that there was a sidewalk on Ben Ali Avenue east of the railroad track which was or could be prolonged across the highway— or, if so prolonged, it was prolonged on the course pursued by plaintiff—or that there was any sidewalk along either side of Auburn Boulevard, or along Marconi Avenue. Appellant argues that the meager testimony set forth above shows the existence of a "sidewalk or path" on the north side of Ben Ali Avenue west of the railroad tracks, and not only justifies a conclusion that a sidewalk there existed, but that it was prolonged along the north side of that street east of the tracks and thence across the highway. The most that could be said of plaintiff's argument in this behalf would be that the evidence presented a question of fact for the jury. The existence of such a crosswalk across Auburn Boulevard could not properly be assumed as was done in the proposed instruction.

■ The said instruction is faulty in other respects. For instance, it is therein recited that violation of the provisions of the code sections set forth constitutes negligence as matter of law. It then recites that if the jury found that plaintiff was walking in the pedestrian crosswalk, crossing Auburn Boulevard, before defendant drove his vehicle into said intersection, and if they found that defendant violated the foregoing provisions of the Vehicle Code respecting failure to yield the right of way to plaintiff, and they found that such violation was a proximate cause of plaintiff's injuries, they should find for plaintiff. And while it set forth the provisions of section 477 of the Vehicle Code which provides that whenever flashing red or yellow signals are used and a yellow lens is illuminated with rapid intermittent flashes, drivers of vehicles may proceed through the intersection or past such signal only with caution, there is no qualification of the foregoing statement by instructing that the jury must also find that defendant did not proceed through the intersection with caution. That is put into the last paragraph of the instruction as another and apparently additional ground for finding for plaintiff. Also, the instruction fails to include the necessity of finding that plaintiff was not guilty of contributory negligence.

■ It was, in effect, a formula instruction, which failed to embrace all of the elements necessary to show legal liability on the part of defendant and to warrant the conclusion that plaintiff was entitled to a verdict. There was no error in refusing to give such instruction. (24 Cal.Jur. 833, § 96; *Starr* v. *Los Angeles Ry. Corp.*, 187 Cal. 270, 278 [201 P. 599]; *Kofoid* v. *Beckner*, 70 Cal.App. 624, 629-630 [234 P. 113].)

■ The next error alleged is that the court erred in giving an instruction reading:

''When the law says that one person has a right of way over another, its purpose simply is to establish a practical basis for necessary courtesy on the highway, and its meaning is that when at any given moment of time, two persons, neither of whom then occupies the space in question, desire to proceed into the same place on the highway, one of them shall yield. The other has the privilege of the immediate use of the space in question. That privilege is his right of way.

''Failure to yield to one to whom the law has given the right of way is negligence.''

This instruction is a quotation of California Jury Instructions (Civil), No. 150, and only purports to define what is meant by right of way. It applies equally to a plaintiff or a defendant and we cannot see that plaintiff suffered by the giving of same. That a pedestrian as well as the driver of a car is required to yield the right of way under certain circumstances is indicated by section 562 of the Vehicle Code, and it cannot be assumed that in the instant case the said instruction was aimed at plaintiff any more than at defendant. Appellant cites and relies upon *Shipway* v. *Monise*, 59 Cal. App.2d 565, 571 [139 P.2d 60]; but the instruction here given was not the same as any there criticized. The ones there given were held to be erroneous in that they made direct reference to plaintiff's obligation to yield the right of way, omitting the corresponding obligation upon the defendant.

■ Appellant's third error alleged is that the trial court erred in instructing the jury that,

''General human experience justifies the inference that when one looks in the direction of an object clearly visible, he sees it. When there is evidence to the effect that one did look, but did not see that which was in plain sight, it follows, that either some part of such evidence is untrue or the person was negligently inattentive.''

This instruction as worded was no more applicable to appellant than to defendant, and we fail to see how the giving

of same can be said to have injured appellant. He first states that it applies only where the facts are in conflict, citing *Bischell* v. *State of California,* 68 Cal.App.2d 557 [157 P.2d 41]. We find nothing in that opinion so holding. The only discussion about conflict of evidence therein contained grew out of the use in the instruction of the words ''irreconcilable conflict'' which were not used in the case here. Appellant further urges that such instruction was erroneous in the use of the words ''it follows that either some part of the evidence is ʾuntrue or the person was negligently inattentive,'' and that this invaded the province of the jury. We are unable to agree. It was left to the jury to decide whether either party was telling the truth *or* was negligently inattentive, or to draw no inference of any kind. The giving of a similar instruction having been held not to constitute error in the Bischell case, we are not disposed to find it injurious to appellant in this case. The form of the instruction given in that case is found in the Book of Approved Jury Instructions (sometimes referred to as ''B.A.J.I.''), at page 169. The same or a similar instruction was given in *Collier* v. *Los Angeles Ry. Co.,* 60 Cal. App.2d 169, 175 [140 P.2d 206] ; *Lasater* v. *Oakland Scavenger Co.,* 71 Cal.App.2d 217, 222 [162 P.2d 486]. This instruction was redrafted subsequently into the form in which it was given in this case to ''make it more understandable to a jury.'' (See ''B.A.J.I.,'' 1946 Supp., p. 43.

▮ Appellant next urges reversal because of the giving of an instruction reading :

''I charge you that it is the duty of a pedestrian crossing a highway to use ordinary care in looking for objects that may cause him injury, and to see and heed that which, by such looking, may have been visible to him, in the exercise of ordinary care and caution. He has no right. not to look or to look carelessly. To look heedlessly is as negligent as not to look at all, and if you find from the evidence that plaintiff LaBranch failed in this respect and thereby proximately contributed to the accident, your verdict must be in favor of the defendant.''

He says there is no evidence that appellant looked heedlessly; that he saw defendant's car and believed it was sufficiently distant to permit his safe crossing. But this is not all of the evidence, for appellant testified also that when he had reached the middle line of Auburn Boulevard, he saw defendant's car coming; that about that time the boy, who was about 10 feet ahead of him, started to run; that plaintiff

did not look around to see what caused the boy to run, but that he looked over his shoulder and looked behind, then looked in the southerly direction and saw defendant's automobile which "looked like a long ways off"; that he then took four or five steps; that his first intimation that he was in a position of danger was when he heard defendant's brakes squeal. The transcript shows:

"Mr. Sitton: Q. Let's go back over it again. When you arrived at the point I am going to point to there—marks the intersection of your path with the double white line at the middle of Auburn Boulevard, you turned your head and looked back down Auburn Avenue, is that correct? A. Yes.

"Q. And you glanced to the south and saw this automobile an indeterminate distance away from you, is that correct? A. Yes.

"Q. And you kept right on walking on this line towards Gage's service station? You think you may have gone four or five steps, is that right? A. Yes.

"Q. How fast were you walking now? A. Twenty miles an hour.

. . . . . . . . . . . . . . . . . .

"Q. So you walked right along, did you? A. Same pace.

"Q. To the point where you got hit with the automobile is that correct? A. I guess it was.

. . . . . . . . . . . . . . . . . .

"Q. Let me go back and tie this up. From the time you left this point X, marked number one, at the edge of the highway, until the time you arrived at the point X where you think is about the point of the collision, you didn't hesitate or stop at any time, did you? A. To look back over my shoulder.

"Q. You didn't stop, though? A. No.

"Q. You kept right on walking, and as you got to the center of the line and you got in this other lane, you turned your head and looked back into Ben Ali Avenue, didn't you? A. Yes.

. . . . . . . . . . . . . . . . . .

"Q. Now, as you were walking along there, going toward that station there, did you keep your eyes on the station where you were going? A. Yes.

. . . . . . . . . . . . . . . . . .

"Q. And how far was the defendant from you at that time when you heard the screech of the brakes? A. He wasn't very far.

"Q. Did you look up to see him? A. I seen him, yes.

"Q. What is that? A. Yes.

"Q. And did you keep your eyes on him from that time forward? A. Not very long because he was swinging into me.

"Q. You saw the lights of his car turn sharply to the right, didn't you? A. To the right?

"Q. Away from you, toward Gage's service station? A. He was coming towards me when I seen it.

"Q. Did you continue to watch him, or what did you do in respect to that? A. I didn't do anything.

"Q. You didn't have time to do anything more than just get hit? A. That's all."

Upon the basis of the testimony set forth above we think that the giving of this instruction was justified, especially since plaintiff himself testified that though he saw the lights of defendant's approaching automobile, he did not stop but kept right on walking, and when he got to the center line of Auburn Boulevard, he looked back over his shoulder into Ben Ali Avenue. The instruction left to the jury the question whether, in view of this testimony, plaintiff exercised ordinary care and caution, and whether he looked heedlessly or carelessly.

█ It is further contended by appellant that giving an instruction in the language of section 562 of the Vehicle Code was error. That section provides:

"(a) [*Yielding of right of way to vehicles.*] Every pedestrian crossing a roadway at any point other than within a marked crosswalk or within an unmarked crosswalk at an intersection shall yield the right of way to all vehicles upon the roadway.

"(b) [*Duty of driver to exercise care.*] The provisions of this section shall not relieve the driver of a vehicle from the duty to exercise due care for the safety of any pedestrian upon a roadway."

In the instruction the word "time" was substituted for the word "point" in the phrase "crossing a roadway at any point other than," etc. This inadvertence cannot be said to be fatal to the instruction. Nor can it be said that the giving of same constituted error. The instruction does not assume that there was not a crosswalk, either marked or unmarked; but merely instructed the jury as to the duty of the pedestrian in the event they concluded there was no such crosswalk.

Appellant's final contention is that there was reversible error in the court's giving, of its own volition, of the following instruction:

"A person, who, himself, is exercising ordinary care has a right to assume that others, too, will perform their duty under the law, and he has a further right to rely and act on that assumption. Thus it is not negligence for such a person to fail to anticipate injury which can come to him only from a violation of law or duty by another. However, an exception should be noted; the rights just defined do not exist when it is reasonably apparent to one, or in the exercise of ordinary care would be apparent to him, that another is not going to perform his duty."

This instruction was applicable alike to plaintiff and defendant and the giving of same cannot be said to have caused injury to plaintiff, especially in view of other instructions given.

The evidence adduced was ample to justify the jury in finding for the defendant, and as we find no errors in the instructions which justify a reversal, the judgment is affirmed.

Thompson, J., and Peek, J., concurred.