[Civ. No. 15131.   First Dist., Div. One.   June 23, 1952.]

RUMILDA B. RIBBLE et al., Appellants, v. JOSEPHINE
ANN COOK, Respondent.

James F. Boccardo, David S. Lull and Edward J. Niland for Appellants.

Campbell, Hayes & Custer and W. R. Dunn for Respondent.

PETERS, P. J.—An automobile driven by defendant Josephine Cook collided with a bicycle being ridden by Horace O. Ribble. Horace was killed. The surviving wife, Rumilda Ribble, and the two surviving adult children of Horace by a previous marriage, brought this action for damages against Cook. The jury brought in a verdict for the defendant. Plaintiffs appeal.

This accident occurred on December 9, 1948. (It did not go to trial until March 7, 1951.) The accident occurred about 8:45 a. m. on a clear day at the intersection of St. John and Eighth Streets in San Jose. St. John Street, which runs east and west, is 39 feet 9 inches wide, and Eighth Street, which runs north and south, is 49 feet 2 inches wide. The view at the intersection in all directions is unobstructed. Defendant, driving a 1937 Chevrolet coupé and accompanied by her 5-year-old daughter, was proceeding south on Eighth Street, while decedent, riding his bicycle, was going west on St. John Street. Thus, as they approached the intersection, defendant was coming from decedent's right. Decedent was 71 years of age and in good health. He had lost his right eye many years before, and wore glasses, but the evidence is that the vision in his remaining eye was good.

No witness testified that he saw both the automobile and the bicycle at the precise moment of impact, and but two witnesses, defendant and Ethel Del Ponte, testified as to the facts immediately surrounding the accident. Ethel Del Ponte was called as a witness by plaintiffs. Just prior to the accident

she was driving north on Eighth Street. As she approached the intersection she was compelled to stop because an automobile turned south into Eighth Street in front of her. Before she started up, she observed a small boy jaywalking southwesterly across the intersection. She followed him with her eyes until he had cleared her proposed line of travel. She then saw decedent 10 or 15 feet before he reached the intersection, riding westerly on St. John Street. He was then on his right side of that street close to its center, riding along at a normal rate of speed. The witness watched the decedent cross her line of proposed travel until he had reached the center of the intersection. Until that time he had not turned his bicycle, but was proceeding in a straight line. The witness then started to drive across the intersection in low gear. When she had proceeded some 15 or 20 feet, which would place her car at about the center of the intersection, or just north of center, she heard a thud, and turned her head to the left. She did not see the impact, but did see the decedent flying through the air over the left front fender of defendant's car. This was the first time she had seen defendant's automobile. The witness stopped her car and went over to where the decedent was lying. Defendant, who had stopped her car and was just descending therefrom, called to decedent, who was lying in the street, "Where did you come from?"

The defendant testified that on the morning in question she was driving her 5-year-old daughter to school; that as she was driving south on Eighth Street, and approached the intersection, she was on her side of the street; that just before she reached the intersection she slowed down and looked both ways on St. John Street and saw no oncoming traffic; that she then drove slowly, in low gear, into the intersection; that after entering the intersection she saw the small boy referred to by Mrs. Del Ponte jaywalking across the street; that the boy was running (Mrs. Del Ponte had testified that he was walking); that she then brought her car to a full stop, and watched the boy until he reached the curb; that then she looked to her right and to her left; that she did not see any traffic at all on St. John Street, and in particular did not see Ribble on his bicycle; that she then started up and had traveled about 4 or 5 feet straight ahead when the accident occurred; that she brought her car to a stop in 4 or 5 feet; that no time prior to the accident had she seen Ribble; that she first saw him lying on the pavement. Defendant also testified that she did not see the automobile that turned in

front of Mrs. Del Ponte, and apparently did not see the Del Ponte car before the accident. The evidence shows that the bicycle of Ribble hit and damaged the left front fender of defendant's car. Defendant fixed the point of impact directly in the center of St. John Street, but on the west side of Eighth Street.

There is some conflicting opinion evidence based on hearsay as to the point of impact given by Officer Haller, called by plaintiffs, who arrived at the scene shortly after the accident. He testified from his accident report, without objection, that he fixed the point of impact at a spot that would place decedent's bicycle five feet across the center line of St. John Street, that is, five feet on the wrong side of the street so far as decedent was concerned. He admitted that he fixed this point of impact from what was told him by defendant and by Mrs. Del Ponte. This opinion is entitled to but little probative value. ▮ While the opinion of an officer who is trained in investigating accidents may be admissible as to the point of impact (*Zelayeta* v. *Pacific Greyhound Lines*, 104 Cal.App. 2d 716 [232 P.2d 572]), such opinion is not admissible unless based on facts observed by the officer at the scene of the accident. Where the opinion is based on what witnesses told the officer, at least where objection is made, it is error to admit it. (*Stuart* v. *Dotts*, 89 Cal.App.2d 683 [201 P.2d 820]; see discussion in the Zelayeta case, p. 727.) Here the evidence, adverse to the plaintiffs, was offered by the plaintiffs, and there was no objection by defendant. But the evidence discloses that the opinion lacked the proper foundation in that it was based on what witnesses had told the officer, and not upon facts he had observed. Thus, Haller's testimony depended upon what he remembered others had told him—upon their credibility, not his. The opinion, under such circumstances, is entitled to but scant consideration.

Thus, so far as the two key witnesses are concerned, Mrs. Del Ponte did not see the actual impact and did not see defendant's car prior to the accident. She did see the decedent prior to the accident and saw a car make a left turn in front of her. Defendant did not see that car, and did not see decedent or the Del Ponte car prior to the accident. The evidence is thus quite scant on the vital facts upon which liability or nonliability depends. To a certain extent, the solution must depend on inferences and presumptions. It is apparent that the questions of negligence and contributory negligence were very close, were factual, and were therefore for the jury,

under proper instructions. Under the evidence and the reasonable inferences therefrom there are at least three possibilities as to the proximate cause of the accident—negligence on the part of defendant, negligence on the part of decedent, or the concurrent negligence of both.

The plaintiffs argue that defendant was negligent as a matter of law in looking but in not seeing decedent, while defendant argues that decedent was contributively negligent as a matter of law, in that the defendant had the right-of-way in that she entered the intersection first, and was coming from decedent's right side. Although the question of defendant's being negligent as a matter of law is a close one, we do not think that we can say that either decedent or defendant was guilty of negligence as a matter of law. ▮ While to look and not see what is plainly visible may, under some circumstances, be negligence as a matter of law (*Huetter* v. *Andrews*, 91 Cal.App.2d 142 [204 P.2d 655]), that question is usually one of fact for the jury (*Leader* v. *Atkinson*, 49 Cal.App.2d 265 [121 P.2d 759]; *Prato* v. *Snyder*, 12 Cal.App. 2d 88 [55 P.2d 255]), and it was a fact question here. ▮ On the other hand, while one first reaching an intersection, or, when both enter at the same time, the vehicle coming from the other's right, has the right-of-way (Veh. Code, § 550), and the one entitled has the right to assume that the other will obey this provision (*Leblanc* v. *Coverdale*, 213 Cal. 654 [3 P.2d 312]), it is equally true that this right can be abused, and that a careless exercise of the right can be negligence. (*Stevenson* v. *Fleming*, 47 Cal.App.2d 225 [117 P.2d 717]; *Benjamin* v. *Noonan*, 207 Cal. 279 [277 P. 1045]; *Green* v. *Pedigo*, 75 Cal.App.2d 300 [170 P.2d 999].) ▮ Moreover, decedent was entitled to the presumption, which is evidence, that he was exercising due care. (*Westberg* v. *Willde*, 14 Cal.2d 360 [94 P.2d 590]; *Anthony* v. *Hobbie*, 25 Cal.2d 814 [155 P.2d 826]; *Lehmann* v. *Mitchell*, 109 Cal.App.2d 719 [241 P.2d 573].) Under the evidence the jury could have found that defendant was guilty of negligence that proximately and solely caused the accident in failing to see decedent, or, if she had the right-of-way, that she abused that privilege. She had stopped in the intersection which could constitute an invitation to decedent to cross in front of her. On the other hand, the jury could have found that the accident was proximately and solely caused by the negligence of decedent in not seeing the defendant's car because of his blind right eye, and in proceeding across the intersection when de-

fendant had the right-of-way. Also, of course, the jury could have found that both were negligent. Which of these solutions was the proper one, was for the jury. Any one of the three finds support in the evidence. The questions of negligence and of proximate cause were for the jury.

From what has been said, it is apparent that the jury's implied findings that the negligence of decedent proximately caused the accident or was a concurrent cause, or that defendant was not negligent, finds support in the record. ■ But the questions of negligence and proximate cause were very close ones. For that reason, any error in the instructions adverse to plaintiffs may well have been the inducing cause of the defense verdict.

The plaintiffs offered, and the court refused to give, the following instruction: "A person who, himself, is exercising ordinary care has a right to assume that others, too, will perform their duty under the law, and he has a further right to rely and act on that assumption. Thus it is not negligence for such a person to fail to anticipate injury which can come to him only from a violation of law or duty by another. However, an exception should be noted: the rights just defined do not exist when it is reasonably apparent to one, or in the exercise of ordinary care would be apparent to him, that another is not going to perform his duty." This is B.A.J.I. instruction number 138. No other instruction was given covering this subject.

This instruction embodies a well-established principle of law. It, or an instruction similar to it, has frequently been approved by the courts. (*Folger* v. *Richfield Oil Corp.*, 80 Cal.App.2d 655 [182 P.2d 337]; *Fietz* v. *Hubbard*, 59 Cal. App.2d 124 [138 P.2d 315]; *Stickel* v. *San Diego Elec. Ry. Co.*, 32 Cal.2d 157 [195 P.2d 416]; *Florine* v. *Market St. Ry. Co.*, 64 Cal.App.2d 581 [149 P.2d 41]; *Connor* v. *Pacific Greyhound Lines*, 104 Cal.App.2d 746 [232 P.2d 500]; *Astone* v. *Oldfield*, 67 Cal.App.2d 702 [155 P.2d 398]; *LaBranch* v. *Scott*, 82 Cal.App.2d 1 [185 P.2d 823]; *Wysock* v. *Borchers Bros.*, 104 Cal.App.2d 571 [232 P.2d 531].)

In at least one case it has been held that the failure to give the instruction in a proper case is prejudicial and reversible error—*Clark* v. *State of California*, 99 Cal.App.2d 616 [222 P.2d 300]. That case was also a wrongful death action, involving the death of a pedestrian hit by a bus that, at dusk, had only its parking lights lit. There, as here, the jury brought in a verdict for defendant. There, as here, the challenged instruction was not given. The court held this to be

reversible error. In so holding, the court first discussed the facts of the case, and then stated (p. 621): "The burden of proof to show contributory negligence on the part of Mrs. Clark was upon defendants, and we think that plaintiff was entitled to have this requested instruction given to be weighed against the foregoing assumptions upon which respondents rely. There is nothing to show negligence on decedent's part as matter of law. (See *Dickinson* v. *Pacific Greyhound Lines*, 55 Cal.App.2d 824, 827 [131 P.2d 401].) The refusal of the instruction was, we think, under the facts of this case, error of grave import."

This reasoning applies with equal force here. The proffered instruction went to the heart of plaintiffs' case. The evidence shows that defendant came to a complete stop in the intersection at a place where decedent could pass in front of defendant's car. It was the theory of the plaintiffs that, under such circumstances, the decedent (and it must be presumed that he was exercising due care), had the right to assume that defendant had surrendered her right-of-way, if any she had. The proffered instruction told the jury that, if the facts were found as contended, the decedent had the legal right to assume that defendant would surrender the right-of-way. Without the instruction the jury may well have assumed that, if defendant originally had the right-of-way, she kept it at all times, and that decedent was under a duty to assume that defendant might abuse that privilege. In determining whether decedent was at fault in trying to pass in front of defendant's car, the jury required the guidance of the proffered instruction. Had the requested instruction been given, the jury could have found that inasmuch as defendant admittedly looked toward decedent, she saw him, and would exercise ordinary care not to run him down. Without the guidance of such an instruction, the jury was left in doubt as to one of the basic problems in the case. If it was prejudicial error to refuse the instruction in the Clark case, it certainly was such error in the instant case.

■ Defendant's main argument in support of the trial court's failure to give the instruction is not that an instruction on the subject involved should not have been given, but that the instruction is discriminatory in that it singles out decedent as the beneficiary of the doctrine, while the rule announced in the proffered instruction should apply to both defendant and decedent. This argument is predicated upon the fact that the instruction uses the word "injury" instead

of "accident," so that, so it is contended, it could only apply in favor of decedent. While the word "accident" might have been a more accurate term than "injury," it is quite apparent that the latter term was used in its broad sense, meaning whatever causes loss. Thus, since the evidence shows that the automobile was slightly damaged in the accident, the instruction quite clearly applied to both parties. The instruction, verbatim, has been approved in several of the cases cited above. In the Wysock case (104 Cal.App.2d 571) the precise argument here made was rejected. The instruction is not subject to the criticism made.

The judgment appealed from is reversed.

Bray, J., and Wood (Fred B.), J., concurred.

A petition for a rehearing was denied July 23, 1952, and respondent's petition for a hearing by the Supreme Court was denied August 21, 1952. Edmonds, J., and Schauer, J., were of the opinion that the petition should be granted.