[Civ. No. 3173. Fourth Dist. Mar. 27, 1945.]

ALEX BISCHELL et al., Appellants, v. STATE OF CALIFORNIA et al., Respondents.

Strother P. Walton for Appellants.

Chester O. Hansen for Respondents.

GRIFFIN, J.—Plaintiffs and appellants brought this action for damages against defendants and respondents as a result of an automobile accident occurring about 7:10 p. m. on July 7, 1943, near the intersection of Blackstone and Gettysburg Avenues just north of Fresno. Blackstone Avenue runs due north and south; Gettysburg Avenue runs east and west and intersects Blackstone Avenue at right angles. At the point of the accident Blackstone Avenue, a well-traveled street, is approximately 45 feet wide. The main traveled portion of the highway consists of. a 16-foot strip of pavement with a white center line. The pavement on each side is bordered by an oiled shoulder 4 to 6 feet in width and those shoulders are each bordered by a graded dirt road ap-

proximately 10 feet in width. Gettysburg Avenue consists of a 21-foot strip of oiled surface with approximately 5 feet of graded dirt road on each side thereof. A stop sign is erected on the northeast and southwest corners of the intersection affecting traffic approaching on Gettysburg Avenue.

Plaintiff Alex Bischell was driving his Plymouth coupé, in which his wife was seated, south on Blackstone Avenue. Defendant Redding was driving a state-owned Chevrolet fire truck east on Gettysburg. His wife, who was a fire fighter, was seated next to him. He had just about negotiated a turn to the north on Blackstone Avenue when about 60 or 65 feet north of the intersection described, the left rear end of the fire truck came in contact with the left front portion of plaintiffs' car, causing considerable damage thereto and injuring the plaintiffs.

Plaintiffs in their complaint allege that Redding was "an employee and agent of the State of California, the Department of National Resources and Division of Forestry" and was operating the truck "within the course and scope of his employment by the State of California as the operator and driver of said fire truck." Damages in the sum of $32,500 were sought. Defendants filed an answer, denied generally any negligence on their part, alleged negligence on the part of plaintiffs, and by way of a cross-complaint sought $592.61 damages.

Defendants set up several additional and separate affirmative defenses. The first is that Redding was a "volunteer member of the fire department maintained by the Fig Garden Fire Protection District, a political subdivision" and was driving the fire truck in responding to a fire alarm and emergency call; that Redding was then and there an employee of the Division of Forestry of the State of California, and that under sections 44c, 401 and 454 of the Vehicle Code defendants were not liable. After trial the jury allowed no recovery for either party. Plaintiffs only appealed from the judgment that followed.

Plaintiffs' grounds for a reversal are that defendant Redding was not a person authorized by the provisions of the sections of the Vehicle Code above mentioned to claim the exemptions and privileges accorded the driver of an authorized emergency vehicle and that all instructions given to the jury on that phase of the case were erroneous.

In this connection, and in connection with the question of the negligence of the parties, defendant Redding's testimony shows that on the day in question there was no fog or rain; that in responding to the call he proceeded east on Gettysburg Avenue at about 20 to 25 miles per hour with the siren going and a red light turned on; that when he was about 400 feet west of the intersection he looked across the field at the northwest corner thereof and saw plaintiffs' car approaching the intersection about one-fourth of a mile north; that he changed to a lower gear, slackened his speed to make the turn and had not yet returned to high gear when the accident happened; that as he approached a point about 150 feet from the intersection plaintiffs' car was then close to 400 feet from it; that when he went into the intersection, at about 12 to 14 miles per hour, with the siren on, plaintiffs were then about 150 feet north of it; that he put his hand out, indicating a left turn; that he then turned north; that all but about 1½ feet of his truck had passed over and across the center white line of Blackstone Avenue when plaintiffs' car struck the fire truck back of the cab on the left-hand side; that he only proceeded the length of the truck before he stopped it; that when it was stopped all of the truck was on the east side of the white center line headed in a northwesterly direction; that when plaintiffs' car stopped, it was headed in a general southeasterly direction with the left front wheel partially over the white center line and the right rear portion just off of the west pavement; that after the accident Mr. Bischell told him that he ''didn't see the fire engine.''

Mr. Bischell testified that about 7 p. m. that day he and his wife decided to go to the store which was just south of Gettysburg Avenue on Blackstone Avenue; that the window on the left side of his car was closed and the right window was within two inches of being closed; that he was knocked unconscious and the last he remembered was turning on Blackstone and proceeding southerly; that he never did see the fire engine before the impact nor hear the siren.

Mrs. Bischell testified that she did not remember anything that happened after July 4th, three days before the accident, and that she did not regain consciousness until August 5th.

Leron Neil testified that he was State Forest Ranger in charge of Fresno County forestry work; that in connection with forestry work the state owns and maintains the fire

equipment involved; that the drivers of the trucks in his district are under his direction and supervision; that Mr. Redding, who was his "employee in charge of that station," was actually dispatched to the fire in question; and that he sent a similar truck and driver from Fresno headquarters to subdue the fire.

Sections 401 and 454 of the Vehicle Code provide that the driver of an authorized emergency vehicle shall be exempt from certain provisions of the Vehicle Code and from liability when the vehicle is being driven in response to a fire alarm and when the vehicle is properly equipped, etc. Section 44c of the Vehicle Code defines an authorized emergency vehicle as "A motor vehicle, either publicly or privately owned, operated by a State or county forest ranger, or a fire warden on salary and directly in charge of fire protection work upon behalf of the State or in any county, . . . in responding to emergency fire calls." The question is whether the facts related are sufficient to bring the fire truck in question within the meaning of that term. It is conceded that the truck was publicly owned and was in the process of responding to an emergency fire call. The only debatable question is whether it was being operated by *a state or county forest ranger or a fire warden on salary and directly in charge of fire protection work on behalf of the state or in any county.* It is plaintiffs' argument that the driver of the truck was not, in a most technical sense, a state or county "forest ranger" or a "fire warden." We are convinced that a common sense rule should here be applied and that such terms should be construed in harmony with the intent of the act. For the prevention and suppression of forest fires, the Legislature adopted section 4000, et seq., Public Resources Code, division 4, chapter 1, article 1.

Under the act the state is divided into a convenient number of fire districts and provides for the appointment of a district "fire ranger" for each district. The district fire ranger shall, under the direction of the state forester, have charge of the fire fighting system and men in such district and is charged with the duty of extinguishing and preventing forest fires. The Board of Forestry provides fire fighting apparatus, organizes fire companies, establishes observation stations and employs men to attend them. The board may enter into cooperation agreements with associations or indi-

viduals for the prevention of forest fires and bear a proportionate share of the cost. A state forester may appoint *"voluntary fire wardens"* to take active steps in extinguishing fires, and perform such duties as the state forester may direct. (§ 4009.)

Defendant Redding testified that he was employed by the Forestry Department of the State of California. He was on salary and assigned to this duty by an authorized fire warden or fire ranger who was charged with the duty of extinguishing forest fires. It must be held that Redding was, in the broader sense of the word, "a fire warden" within the meaning of section 44c of the Vehicle Code, and was directly in charge of fire protection work on behalf of the state or in the county. The station and apparatus operated by the defendant Redding was but a part of an organized fire fighting system, which system was in charge of the district fire ranger but under the direction of the state forester. Several such fire trucks were employed in that fire district. It would be physically impossible for the "fire ranger" specified in the Public Resources Code, to personally operate all of the fire trucks in his district. It would be placing a strained construction on section 44c of the Vehicle Code to hold that that section did not apply to defendant Redding, who was on a salary, duly appointed by the state forester, and assigned to the particular duty of driving a properly equipped fire truck, who had charge of the station and apparatus and who had been directed to attend fires as such driver and take charge of such fire protection work on behalf of the state. Under the facts here involved, it clearly appears to us that it was the intention of the Legislature to include the driver of such a fire truck as this within the term "fire warden" and to bring him within the provisions of section 44c of the Vehicle Code, and that the immunities and exemptions extended by sections 401 and 454 of the Vehicle Code are applicable.

■ The instructions given on this subject were proper as well as the instructions given in the language of section 554 of the Vehicle Code on the duty of drivers of other vehicles to yield the right of way, to drive to a position at the right-hand edge of the highway and stop clear of any intersection. Under the facts related, the jury's conclusion on the question of the negligence of the parties is fully supported.

■ Plaintiffs next complain of defendants' given instruction which reads:

"General human experience justifies the inference that

when one looks in the direction of an object clearly visible, he sees it, and that when he listens, he hears that which is clearly audible. When there is evidence to the effect that one did look, but did not see that which was in plain sight, or that he listened, but did not hear that which he could have heard in the exercise of ordinary care, it follows that either there is an irreconcilable conflict in such evidence or the person was negligently inattentive."

It is argued that the instruction is "highly ambiguous" in that there can be no "irreconcilable conflict" if, as the first part of the instruction states, the "object was clearly visible and clearly audible"; that the instruction assumed as a fact that the fire truck was clearly visible and clearly audible when, in fact, the evidence on the question was conflicting. This instruction follows very closely, similar instructions approved in *O'Brien* v. *Schellberg,* 59 Cal.App.2d 764, 769 [140 P.2d 159]; *Astone* v. *Oldfield,* 67 Cal.App.2d 702, 710 [155 P.2d 398]; and *Busch* v. *Los Angeles Ry. Co.,* 178 Cal. 536 [174 P. 665, 2 A.L.R. 1607]. There is ample evidence that the fire truck could have been seen and the siren heard by plaintiffs had they exercised reasonable care and vigilance. They offered many reasons why the truck could not have been seen or the siren heard by them. These were questions of fact for the jury to determine. The instruction does not assume that the fire truck was plainly visible or the siren plainly audible, but leaves to the jury the application of the general rule to the facts in the case. While not happily worded, the instruction, when read as a whole, cannot be said to be "highly ambiguous." No prejudicial error appears.

■ The next complaint is directed to the failure of the court to give two of the plaintiffs' instructions, one bearing upon their right of recovery notwithstanding the exemptions granted defendants by section 454 of the Vehicle Code, if the evidence disclosed that defendant Redding drove the emergency vehicle in such a manner as to be guilty of reckless driving or guilty of an arbitrary exercise of the privileges declared in that section. The trial court not only read to the jury section 454 of the Vehicle Code in its entirety but also gave other instructions adequately covering the subject matter. The second instruction bore upon the question of contributory negligence. Instructions, offered by defendants, were given covering the general doctrine of contributory negligence. Plaintiffs cannot now be heard to complain because

of the refusal of the trial court to give their proffered instruction on that same doctrine where the instructions given, even though offered by defendants, fully and adequately covered the subject matter. This complaint is without merit.

Judgment affirmed.

Barnard, P. J., and Marks, J., concurred.

A petition for a rehearing was denied April 25, 1945, and appellants' petition for a hearing by the Supreme Court was denied May 24, 1945. Edmonds, J., and Carter, J., voted for a hearing.