[Civ. No. 14895. First Dist., Div. One. Apr. 8, 1952.]

THOMAS B. RICKEY II, a Minor, etc., Appellant, v. MARION MARGUERITE KARDASSAKIS et al., Respondents.

Myers & Carter for Appellant.

Richard Belcher, Clark & Heafey and Gerald P. Martin for Respondents.

PETERS, P. J.—Through his father as guardian *ad litem*, plaintiff Thomas B. Rickey II, brought this action against Mr. and Mrs. Kardassakis for injuries received by him when struck by an automobile driven by Mrs. Kardassakis. The defendants denied the allegations of the complaint and pleaded, as a special defense, that the accident was unavoidable. The jury specifically found that the defendants were "not negligent," and brought in its verdict in their favor. Plaintiff appeals, contending that the judgment is unsupported by the evidence, that the evidence shows that Mrs. Kardassakis was guilty of negligence as a matter of law, and that prejudicial error was committed in refusing to give a proffered instruction.

This is a typical fact case. The evidence is conflicting, and that most favorable to respondents supports the judgment. There was no prejudicial error in refusing to give the instruction. For these reasons there is no merit to this appeal.

The accident happened in San Rafael, on June 10, 1949, at about noon. Tommy was then about 3 years of age. He resided with his parents at No. 27 Billou Street. Defendant Marion Kardassakis, mother of two children, and the wife of the other defendant, resided about five houses away on the same street. The street is uphill from the Kardassakis home to the Rickey home. Mrs. Kardassakis was thoroughly familiar with the area, and knew that several young children customarily played on the sidewalks.

Billou Street is about 25 feet wide and has rolled curbs, so that automobiles customarily park with their right wheels over the curb. At the time of the accident there was a Ford parked in front of No. 31 Billou Street, which house is adjacent to the Rickey house. This Ford was parked with its right wheels over the curb. Some 18 feet in front of the parked Ford, and inside the curb line, there was a telephone pole.

On the day in question Mrs. Kardassakis was driving her automobile, a 1941 Oldsmobile just purchased that day, from her home on Billou Street intending to stop at the Rickey

house to deliver a message. She was accompanied by her two young children. In driving from her home to the Rickey home, Mrs. Kardassakis was required to pass the parked car and then the telephone pole in order to park in front of the Rickey home. It was a dry, sunny day. Mrs. Kardassakis had had four years' experience in driving an automobile. She was traveling upgrade. Somewhere between the parked Ford and the telephone pole, or just beyond it, she ran into Tommy. There is a major and substantial conflict over the exact point of impact.

Mrs. Rickey testified that just prior to the accident she had given her children, including Tommy, their lunch and had gone across the street to visit a Mrs. Birdsall who lived at No. 30 Billou Street. Mrs. Birdsall was working in her front garden, and the two women started to chat while standing there. Mrs. Rickey testified that Mrs. Kardassakis, as she passed by, waved and called out asking how they liked her new car. Mrs. Birdsall testified that she did not see Mrs. Kardassakis wave, but did hear her call out, but did not hear what she said. Mrs. Kardassakis testified that she did not wave or call out.

The last time Mrs. Rickey saw Tommy, prior to the accident, he was sitting on the front porch of the Rickey house eating his lunch. She did not see the accident. She testified that when she last saw the Kardassakis' car it was going 15 miles per hour. Mrs. Birdsall corroborated this testimony. Mrs. Kardassakis testified that she was going about 10 miles per hour just prior to the accident.

Mrs. Kardassakis testified that she intended to park in front of the parked Ford; that she saw no one in the area of the parked car; that she started to pass the parked car, and, when about 3 feet beyond it, heard a thud; that she brought her car to a stop within 5 or 6 feet; that then her car was at a slight angle towards the curb, that is, she had started to turn in to park. Tommy was then under her car between the front and rear wheels, one of the front wheels having apparently passed over him. The child incurred a broken leg, gravel burns and bruises.

All of the key witnesses fixed on a diagram the spot where they remembered the Kardassakis' car to have been after the accident. This presents the only important conflict in the testimony. Mrs. Kardassakis placed her car about halfway past the parked Ford at a slight angle towards the curb. Mrs.

Rickey placed the Kardassakis' car halfway past the telephone pole and much closer to the curb. This would place the Kardassakis' car some 18 to 20 feet from the point testified to by Mrs. Kardassakis. Mrs. Birdsall corroborated Mrs. Rickey on this point. The owner of the parked Ford, her mother, and another neighbor, all placed the Kardassakis' car near or beyond the telephone pole. Mrs. Rickey and Mrs. Birdsall testified as to observing some bread (Tommy was eating a sandwich before he was hit) in the vicinity of the telephone pole after the accident. Mrs. Kardassakis testified that she did not observe any bread in that area. She testified that as she approached the spot where she intended to park, she could see the area around the telephone pole but did not see Tommy in that area. Mrs. Birdsall testified that just before the accident she saw Tommy near the pole.

Appellant argues that the evidence conclusively places the point of impact 3 or 4 feet out from the curb at or near the telephone pole. It is argued that, because Mrs. Kardassakis testified she could see everything around the pole, and because Mrs. Birdsall places Tommy near the pole just prior to the accident, the finding of "not negligent" is unsupported. It is also argued that such evidence establishes negligence on the part of Mrs. Kardassakis as a matter of law. There is no merit to these contentions. The arguments might be valid if the major premise as to the point of impact were correct. ■ While there is substantial evidence by at least five witnesses fixing the point of impact at or near the pole,[1] that testimony is contradicted by Mrs. Kardassakis. She fixes the point of impact as just in front of the parked Ford. There being nothing inherently improbable in this testimony, this conflict, under elementary principles, was for the jury.

The importance of this conflict is this: if the accident happened near the pole, there was nothing to obstruct the view of Mrs. Kardassakis, who admitted that she was looking towards the pole just prior to the accident, and she should have seen Tommy as he ran into the street. On the other hand, if the accident happened just in front of the parked Ford, then Tommy must have run in front of the parked Ford into the path of the Kardassakis' car. In such event, the jury was justified in finding, as it did, that Mrs. Kardassakis was not negligent. ■ As was said in *Burton* v. *Los Angeles*

---

[1]There are some inconsistencies on this point in the testimony of Mrs. Birdsall and in that of the owner of the Ford car.

*Ry. Corp.*, 79 Cal.App.2d 605, 610 [180 P.2d 367] : "But if a child suddenly runs from the cover of an automobile standing at the curb of. a narrow street toward the front of an approaching bus traveling at a speed of 15 miles an hour, in either the artificial light of a street or in the brilliance of a noonday sun, it would require more than reasonable care to avoid a collision." (See, also, *Bennett* v. *Stein*, 42 Cal.App. 2d·237 [108 P.2d 694] ; *Wilcox* v. *Epstein*, 65 Cal.App.2d 581 [151 P.2d 156].)

█ Appellant offered, and the trial court refused to give, the following instruction : "General human experience justifies the inference that when one looks in the direction of an object clearly visible, he sees it, and that when he listens, he hears that which is clearly audible. When there is evidence to the effect that one did look, but did not see that which was in plain sight, or that he listened, but did not hear that which he could have heard in the exercise of ordinary care, it follows that either there is an irreconcilable conflict in such evidence or the person was negligently inattentive."

This is the so-called "looking and not seeing" instruction.[2] While, under appellant's version of the evidence as to the point of impact, it would have been proper to have given such an instruction, failure to give it was not necessarily error, and certainly was not prejudicial error. In *Cooper* v. *Smith*, 209 Cal. 562 [289 P. 614], the Supreme Court, in a case where a pedestrian looked down a highway but did not see defendant's approaching car, and where the trial court refused to give such instruction, stated (p. 566) : "Complaint is made of the court's refusal to instruct the jury that 'when to look is to see and a party or witness states that he looked and did not see, his testimony in this respect to-wit, that he looked, must be disregarded.' The proposed instruction is a mere commonplace, within the knowledge of all the jurors, and is argumentative, rather than a statement of law. The court fully, and in terms favorable to the defendant, instructed the jury as to the plaintiff's duty to look before and while crossing the pavement."

In *Schwenger* v. *Gaither*, 87 Cal.App.2d 913 [198 P.2d 108], the court, citing the case of *Cooper* v. *Smith, supra*, stated (p. 914) : "The failure to give a tendered instruction on 'to look is to see' was not error."

---

[2] (This instruction was taken from B.A.J.I., Instruction No. 140. The authors have revised it in several respects in their 1950 revision.)

On the other hand, the questioned instruction, or one like it, has been given in several cases, and the courts have held that it was not error to give it. (See *Bischell* v. *State of California*, 68 Cal.App.2d 557 [157 P.2d 41]; *Lasater* v. *Oakland Scavenger Co.*, 71 Cal.App.2d 217 [162 P.2d 486]; *Bosserman* v. *Olmstead*, 77 Cal.App.2d 236 [175 P.2d 49]; *LaBranch* v. *Scott*, 82 Cal.App.2d 1 [185 P.2d 823].)

The jury, in the instant case, was not without a general guide on the subject matter of the proffered instruction. The court instructed that: "You are hereby instructed that the right of drivers of automobiles to use public highways is not superior to that of the humblest pedestrian, and in exercise of a common right to the use of the public highways all persons using the same must exert constant care and caution for the conservation of their correlative rights commensurate with the special hazard which is peculiar to and nowadays ever present in the use of public highways; that the driver of an automobile has no right to assume that the road is clear but under all circumstances and at all times she must anticipate the presence of others; and the fact that she did not know that anyone was on the highway is no excuse for the conduct which would have amounted to recklessness if she had known that another vehicle or person was on the highway; even though the operator of an automobile may be rigidly within the law, she still remains bound to anticipate that she may meet persons at any point of the street, and she must, in order to avoid the charge of negligence, keep a proper lookout for them and keep her automobile under such control as will enable her to avoid a collision with another person using proper care and caution and if the situation requires, he must slow up and stop."

Under the circumstances, it was not error to refuse the proffered instruction.

The judgment appealed from is affirmed.

Bray, J., and Wood (Fred B.), J., concurred.