[Civ. No. 19171.   Second Dist., Div. Two.   Apr. 30, 1953.]

VICTOR M. CROWDER, Appellant, v. THE ATCHISON, TOPEKA AND SANTA FE RAILWAY COMPANY (a Corporation), Respondent.

Hildebrand, Bills & McLeod, Richard E. Crow and D. W. Brobst for Appellant.

Robert W. Walker and J. H. Cummins for Respondent.

FOX, J.—Plaintiff appeals from a judgment for defendant in an action to recover damages for personal injuries under the Federal Employers' Liability Act (45 U.S.C.A., § 51 et seq.). Defendant is a common carrier within the provisions of that statute. The complaint was in two counts: (1) that plaintiff was injured by reason of defendant's failure to provide him with a safe place to work; (2) that plaintiff was injured by reason of the negligence of defendant's employees in operating an engine at an excessive rate of speed at a time and place when it was necessary for him to dismount from the train while in the course of his employment. Plaintiff urges on appeal that (1) certain instructions given by the trial court were prejudicially erroneous; (2) the trial court committed prejudicial error in refusing his offer of evidence to establish custom and practice relating to the rate of speed at the place of injury.

Plaintiff was in defendant's employ as a switchman or yardman at San Diego since 1946. He was injured on the afternoon of October 8, 1950, at which time he was one of a crew engaged in turning around a Diesel-drawn streamline train (No. 77) to prepare it for its regularly-scheduled return trip to Los Angeles. This turn-about process is accomplished by the use of a Y-form. No. 77 arrives in San Diego proceeding away from Los Angeles. To reverse its direction, a switch engine hauls the train along one arm of the Y and down its lower stem until the engine of the streamliner is

clear of a switch situated at what may be described as the apex of the Y, or the point of junction of the two arms and the stem of the Y. When this switch is cleared, it is automatically thrown. The switch engine is then uncoupled, the air brakes tested, and the streamliner, powered by its Diesel, leaves the Y via the arm leading into the mainline tracks headed toward Los Angeles. The brake test and detachment of the engine take about two minutes.

The injury complained of occurred while such a movement was in process. On the afternoon of the accident, it was plaintiff's duty to ride in the cab of the Diesel engine and at some point step off or alight from the engine to check the spring switch previously described and assure that it had functioned properly to enable the train to proceed on its run to Los Angeles. Plaintiff had the further duty, after completing his switch inspection, to proceed to Pacific Boulevard, a heavily-traveled main highway traversing both arms of the Y, and there control traffic to prevent obstruction of the tracks that would interfere with or delay passage of the train. Located between the two arms of the Y are electrically controlled traffic signals. Adjacent to the spring switch is a paved private road (Consolidated Road), which normally carried heavy traffic at about the time the accident happened. There was a distance of some 100 feet between the Pacific Highway and Consolidated Road, of which between 60 and 65 feet consisted of tough, wiry grass and weeds grown to a height of between 6 and 10 inches, and the remainder was bare dirt. About 30 feet south of Consolidated Road, the surface was black topped on both sides of the railroad. The spring switch was about 175 feet from the highway where a switchman customarily flagged traffic during the two-minute interval while the air-brake test was made prior to the train's departure.

The evidence showed that the rules of defendant railroad limit the speed of trains operating on the Y to 15 miles per hour. Plaintiff testified that at the time of the accident he alighted from the Diesel cab while the train was traveling between 18 and 20 miles per hour, stepping into the grassy area. As his feet struck the ground, plaintiff was tripped by the grass and fell, injuring his left knee and back. He regained his feet quickly and performed his duties of switch inspection and traffic control. Plaintiff stated that he anticipated the speed of the train would be diminished before he got off, but he alighted at that place despite no slackening

of the train's speed. On other occasions he had stepped off onto the bare dirt. Plaintiff admitted he knew of a company rule requiring an employee not to get off an engine or car moving at an excessive rate of speed and testified that he thought 15 to 18 miles an hour would be an excessive rate at which to dismount under any of the conditions along the track. He testified that he was never required by the company to get off a train that was traveling too fast, that it was a matter for his own judgment as to where and when he would get off the train, and that he could alight when the train stopped if he so chose.

With reference to the speed of the train, plaintiff testified he did not realize that the train was going as fast as it was until a few seconds before he stepped off, when he became aware that it was going between 18 and 20 miles per hour. The train stopped in its usual place, about 120 to 150 feet from where plaintiff alighted, or just a few feet beyond the switch. Albert Smith, a yardman called by plaintiff, testified that the train was going about 18 to 20 miles an hour when plaintiff stepped off, and that such was the speed the engineer in control customarily traveled at that place. He stated switchmen usually do not get off a train going more than 10 miles an hour. The engineer of the switch engine testified that the train was going at a maximum of 12 miles per hour during the movement prior to the clearing of the switch. There was other testimony that a switchman was permitted to step off the train anywhere along the arm of the Y here involved whenever, in his discretion, he considered it safe to do so.

About three weeks after the accident, plaintiff was forced to stop working because of progressive pain attributable to his injury. He has been idle since then.

Plaintiff does not challenge the sufficiency of the evidence to sustain the judgment. He complains, however, about certain instructions which the court gave.

■ To recover under the act it is incumbent upon plaintiff to establish that the railway company was negligent and that such negligence was a proximate cause of his injury. (*Spencer* v. *Atchison, T. & S. F. Ry. Co.*, 92 Cal.App.2d 490, 494 [207 P.2d 126] ; *Eckenrode* v. *Pennsylvania R. Co.*, 335 U.S. 329 [69 S.Ct. 91, 93 L.Ed. 41] ; *Tennant* v *Peoria & P. U. R. Co.*, 321 U.S. 29, 32 [64 S.Ct. 409, 88 L.Ed. 520].) Contributory negligence of plaintiff is not a defense to his action, but can be considered only in the reduction of the

damages. (Federal Employers' Liability Act, § 53.) ▓ If, however, plaintiff was guilty of negligence and his negligence was the sole proximate cause of his injuries then he cannot recover. (*Chicago, St. P., M. & O. R. Co.* v *Arnold*, 160 F.2d 1002, 1006.) The court correctly instructed the jury on these questions and plaintiff does not claim otherwise. The jury was also instructed in accordance with plaintiff's request, that plaintiff did not assume the risks of his employment. Plaintiff, however, contends that three other instructions "injected into the case the issue of the assumption of risk which has been abolished." ▓ The first of these instructions reads: "You are instructed that, if the plaintiff had a choice of using a reasonably safe area in which to alight from the train but voluntarily chose to use an area which was so unsafe that the risk of using it was obvious and such that a man of ordinary prudence would avoid, he is *ordinarily* deemed negligent in the absence of a showing of emergency, sudden peril or other circumstances justifying such choice. The fact that a less dangerous alternative is inconvenient furnishes no excuse for knowingly incurring peril." (Italics added.)

Plaintiff argues that the jury in effect was told by this instruction that if he voluntarily chose to use an area which was so unsafe that the danger of using it was obvious, he would be negligent as a matter of law. Plaintiff overlooks the word "ordinarily" preceding the words "deemed negligent." It is thus apparent that the question of whether the plaintiff's conduct under the described circumstances was negligent was left to the jury's determination as a question of fact.

▓ The second instruction plaintiff challenges reads: "A person who, himself, is exercising ordinary care has a right to assume that others, too, will perform their duty under the law, and he has a further right to rely and act on that assumption. Thus it is not negligence for such a person to fail to anticipate injury which can come to him only from a violation of law or duty by another. However, an exception should be noted: the rights just defined do not exist when it is reasonably apparent to one, or in the exercise of ordinary care would be apparent to him, that another is not going to perform his duty. One is not justified in ignoring obvious danger, although it is created by another's misconduct, nor is he ever excused from exercising ordinary care."

Plaintiff contends this instruction is in direct conflict with

the holding in *Ericksen* v. *Southern Pac. Co.*, 39 Cal.2d 374 [246 P.2d 642]. He points to the statement in the instruction that "One is not justified in ignoring obvious danger, although it is created by another's misconduct" as being at variance with the principle stated in the Ericksen case that "The plaintiff's knowledge of the unsafe nature of the premises does not relieve the defendant of liability." There is no conflict or inconsistency here. In the Ericksen case the performance of the employee's duties required him to be at an unsafe place. Since it was necessary for him to be there in order to do his work he does not, under the Federal Employers' Act, assume the risk or hazard of being injured as a result of such unsafe premises even though he is aware of their condition. By the express terms of the act he is relieved of responsibility for the assumption of such a risk and the liability for an injury proximately resulting from such hazard is placed on the employer. The problem in the Ericksen case was truly one of assumption of risk and the quotation from the opinion is an obviously correct statement of that principle. The quoted instruction, however, does not deal with assumption of risk. It lays down a yardstick by which to determine whether or not a person is guilty of negligence under certain circumstances. Negligence on the part of plaintiff was an issue in this case for he was free to determine, and did determine, when and where to step off the train. His conduct in such circumstances was a proper subject under the pleadings and evidence for the jury's appraisal. It was therefore necessary to fully instruct the jury on negligence. The instruction is a correct statement of the law and was properly given.

Plaintiff also complains that these instructions assume there was an obvious danger. The instructions do not so state. Implicit in each is the question, for the jury's initial determination, of whether or not the danger was obvious as a matter of fact.

Plaintiff claims the following instruction deals with the assumption of risk and is therefore erroneous. It reads: "You are instructed that under the Federal Employers' Liability Act the employer is not liable for those risks or dangers which it could not avoid in the observance of its duty of due care. Industrial enterprise entails for all those engaged in it certain hazards of life and limb which no amount of care on the part of the employer can avoid.

"In applying the above principle to this case, in order

to recover plaintiff is required to prove by a preponderance of the evidence that the defendant through its agents, servants or employees was guilty of negligence, which, in whole or in part, proximately caused the accident and any injuries or damages resulting therefrom, and if you find from a preponderance of the evidence that the dangers, if any, to which the plaintiff was subjected, and which caused his injuries, if any, could not have been avoided by the defendant in the exercise of reasonable care, then the plaintiff is not entitled to recover against the defendant.''

When correctly analyzed this instruction simply told the jury that unless the defendant was negligent and such negligence, in whole or in part, proximately caused plaintiff's injuries, he could not recover. That is a correct statement of the law. (*Spencer* v. *Atchison, T. & S. F. Ry, Co., supra.*) True the instruction uses the terms ''risks'' and ''hazards'' but there appears no intimation that plaintiff is required to assume any risk or hazard which flows from defendant's failure to use reasonable care. It is thus plain that the instruction relates only to negligence and proximate cause and does not even by indirection introduce the question of assumption of risk.

Plaintiff relies on *Perrett* v. *Southern Pac. Co.*, 73 Cal. App.2d 30 [165 P.2d 751]. That case is clearly distinguishable. There the jury was in effect told plaintiff could not recover if the train was operated in the usual and ordinary way; that ''unless there was an unusual jerk out of the ordinary the jury must find for the defendant.'' (P. 38.) This assumed that a ''normal'' jerk could not be the result of negligence. The court therefore properly concluded that ''[t]hese instructions withdrew from the jury the inference that the operation of this type of engine and train might itself be negligence.'' (P. 35.) As pointed out by the court, the issues before the jury were whether the defendant was negligent and whether such negligence proximately caused the injury. ''The mere fact that the risk was an ordinary or usual one is a false factor. . . . What is ordinary may also be negligent. That issue was erroneously taken from the jury by the instruction.'' (P. 38.) The instructions in the instant case plainly avoid the error of suggesting that plaintiff was required to assume any hazard or risk induced by defendant's failure to use reasonable care in its operations. Considering the instructions in their entirety, as we are bound to do, it is clear that the jury was fully and fairly advised on all applicable principles of the law.

Plaintiff's second contention is that it was prejudicial error to reject his offer of evidence to establish a custom and practice of engineers charged with moving trains on the Y to slacken their speed to between 10 and 15 miles per hour while traveling on the Y. This argument cannot be sustained for several reasons. An examination of the record discloses that there was lack of a sufficient foundation for the introduction of such evidence. Plaintiff testified that he had worked with some of the 15 engineers engaged in switching operations, but could not say he worked with all of them. There was no indication that he had personal knowledge of the practices of enough engineers to actually establish the existence of a prevailing custom or usage in the area where he was injured.

But assuming that the proffered evidence should have been admitted, plaintiff could not have been prejudiced by its exclusion. From his own testimony, it is clear that plaintiff did not rely on the purported custom and usage but stepped from the train at a time when, based on his own judgment and observation, he knew it to be exceeding what he sought to represent as the customary speed. Furthermore, plaintiff introduced in evidence a company rule limiting the rate of speed on the Y to 15 miles an hour, which is, in effect, what plaintiff sought to establish by evidence of custom. Of similar probative value was the introduction in evidence of plaintiff's own accident report, which stated that "switch engineer J. W. Moore was taking train into a higher speed than usual." This evidence placed before the jury the issue of defendant's purported deviation from an established standard of reasonable care as the proximate cause of plaintiff's injury The case cited by plaintiff, *Fowler* v. *Key System Transit Lines,* 37 Cal.2d 65 [230 P.2d 339], is not here applicable. In that case, the striking from the record of evidence of a custom firmly established by defendant was held prejudicial error, where it was shown that such custom was, at the time of injury, relied on by plaintiff and defendant's departure from such custom without notice or warning to plaintiff was important on the issue of its negligence.

The judgment is affirmed.

Moore, P. J., and McComb, J., concurred.

Appellant's petition for a hearing by the Supreme Court was denied June 18, 1953. Carter, J., was of the opinion that the petition should be granted.