[Civ. No. 21770.   Second Dist., Div. Two.   Nov. 28, 1956.]

BURNELL R. CHADEK, Respondent, v. VIRGINIA ROSE SPIRA, Appellant.

Bauder, Gilbert, Thompson & Kelly for Appellant.

William Barnett Spivak for Respondent.

FOX, J.—Defendant appeals from a judgment in favor of plaintiff after a verdict in a personal injury action arising out of an intersection collision.

Defendant assigns as prejudicial error the giving of five instructions.

The accident occurred around 5 p. m. on August 21, 1954, at the intersection of Crenshaw Boulevard and Rodeo Road, in the city of Los Angeles. Crenshaw is a six-lane thoroughfare running in a north-south direction, and is approximately 72 feet wide in the area here involved. Rodeo Road, which is 56 feet wide, is laid out in an east-west direction. The intersection was controlled by traffic signals located at each of its four corners. These signals are of the semaphore type, which flash red and green in conjunction with an arm bearing the legends STOP and GO as the lights change. When a green signal changes to red, all four corners are controlled by the red light and STOP indicator-arm for three seconds before the next GO signal appears.

At the time in question, plaintiff was 27 years old, married and employed. He was traveling west on Rodeo and had been stopped by a red traffic light immediately before the accident. In front of him was another vehicle which was at an angle preparatory to making a right turn into Crenshaw. The second vehicle behind plaintiff's was occupied by one Donald Bigbee, who had also been stopped by the red light and who witnessed some of the subsequent proceedings. Plaintiff testified that his car remained stationary until the signal changed to green for east-west traffic on Rodeo. At that time, the car

in front of his turned right into Crenshaw. Plaintiff then proceeded forward in low gear at a speed of between 5 and 10 miles an hour and was at a point 20 feet west of the east prolongation of Crenshaw and 17 feet south of the north curbline of Rodeo Road when his car was struck by defendant's vehicle, which was northbound on Crenshaw. The front of defendant's car smashed into the left side of plaintiff's car, damaging the fender, hood, forward door, door post, and floorboard. Plaintiff testified he first saw defendant's car when it was three to five feet away and that it was traveling between 30 and 45 miles an hour. He testified he had no time to avoid the crash.

Mr. Bigbee testified that plaintiff's car did not move until the signal changed to green. He stated that when that happened, the car in front of plaintiff executed a right turn into Crenshaw. Plaintiff then drove into the intersection.

Defendant testified that she was driving north in the middle lane of Crenshaw. Her infant child was in the front seat beside her. When she was about 25 feet from the intersection she was traveling between 15 and 20 miles an hour. She had driven past this intersection 20 or more times and was aware the light signal changed with no intervening cautionary light. She was somewhat hazy and unsure whether she saw the traffic lights as she approached the intersection. She could not remember for certain whether she saw the lights but testified she observed the arm-signal on the southeast corner. When she was about 10 or 15 feet north of the crosswalk the indicator-arm said Go. According to her testimony, after she entered the intersection she noticed the light on the northwesterly side changing to red just before the collision. She testified she saw plaintiff's car when it was about 15 feet away and swerved to her left to avoid it. She stated: "I put my foot on the brakes, but it happened so fast that my car was going too fast to stop that sudden." To the question as to what she observed about traffic going east and west on Rodeo, defendant replied: "I didn't see—I was looking straight ahead." The impact jolted defendant's child and bruised its lip. She had the child examined by a doctor and later took it to a hospital for further examination.

Police Officer Deiro testified to a contradictory conversation he had with defendant after the accident. Defendant stated to him that "she believed she was right at the time she entered the intersection, and that she was in the intersection when it

turned to red." However, the officer testified defendant also told him that as she approached a point about 10 to 15 feet south of the south crosswalk of the intersection "the light turned to red for her direction of travel, and that she continued on into the intersection, and the next she knew there was a car in front of her." Upon cross-examination by defendant's counsel, the officer testified defendant told him: "At this point, 10 to 15 feet south of the crosswalk, it was just starting to turn red for me and I continued." Frank Pipp, another investigating police officer, testified he found brush marks extending two feet to the north made by plaintiff's car. He testified defendant's car was damaged "quite excessively. The fender was pushed in and the grille had been apparently popped out from the impact, and part of it was broken."

Plaintiff testified he was healthy, active, and engaged in an occupation requiring manual labor prior to the accident. He had passed physical examinations prior to military service in World War II and Korea.

Plaintiff was injured in the region of the lower rib cage by reason of the collision, which caused ache and discomfort. X-rays taken immediately following the accident showed that plaintiff's ribs "were pushed in." Plaintiff resumed his labors after the accident, but his chest pains were so severe that he could not continue to work.

Dr. McMasters, a medical doctor specializing in orthopedic surgery, testified his examination of plaintiff disclosed a definite concavity type of deformity in the rib area of the left side which was not present on the right side. Although the X-ray did not demonstrate the presence of injury to the ribs, Dr. McMasters stated the deformity was caused by a traumatic separation of the ribs where they join the cartilage, which does not show up as a positive shadow on X-ray pictures. It was Dr. McMaster's opinion that plaintiff had a permanent deformity, but that in the course of time plaintiff would be capable of normal activity which did not require strenuous forms of physical exertion. He thought also surgery might probably be indicated to alleviate plaintiff's condition.

During the month's period after the accident, plaintiff was hospitalized three times, once for observation, then for a spinal test, and lastly for an operation by Dr. Grant, an orthopedic surgeon, for the resection of three ribs. Dr. Grant found an abnormality in the attachment of the seventh, eighth

and ninth ribs to the costal cartilage. He testified that these three ribs were attached to one costal cartilage, "so that apparently the blow must have hit him here [indicating] and it sprang the ribs from the costal cartilages, so all three of them sprung together . . ." Dr. Grant performed an operation in which he removed two inches of each of the three ribs. Plaintiff wore a metal and leather brace for four and one-half months after the operation.

Dr. Cass, a medical witness called by defendant, found no significant physical impairment of plaintiff. He observed that plaintiff had a modified pigeon-breast deformity, which he stated could be of congenital origin. He stated: "If it wasn't there before he was hurt, it was probably due to an injury to the cartilage." He testified such a deformity could be produced by a separation of the juncture of the cartilage with the ribs caused by a blow. He had no record of bruises or marks on plaintiff's chest to indicate the deformity was of traumatic origin.

Plaintiff was awarded damages of $9,000. His medical expenses were approximately $1,700. Loss of earnings over a period of some four months was placed at $1,200.

Defendant contends the court gave five erroneous instructions. She challenges the wording of the following instruction: "It is the duty of the driver of a motor vehicle, using a public highway, to be vigilant at all times and to keep the vehicle under such control that, to avoid a collision, he can stop as quickly as might be required of him by eventualities that would be anticiapted by an ordinarily prudent driver in like position." Defendant specifically states she does not complain of the form of this instruction, but asserts it is inapplicable to the evidence and thus tended to mislead the jury. This is without merit. Defendant herself requested a very similar instruction reading as follows: "It is the duty of every person using a public highway, whether a pedestrian or the driver of any kind of vehicle, to exercise ordinary care at all times to avoid placing himself or others in danger and to exercise ordinary care at all times to avoid a collision." The challenged instruction was clearly responsive to the evidence that when defendant was 10 to 15 feet south of the crosswalk, the signal changed to red, but she continued on and was unable to avoid the collision because her car was "going too fast to stop that sudden." The giving of the instruction, which was correctly phrased as a proposition of law, was applicable to both parties, and found support

in the evidence, was entirely appropriate. This instruction imposes the duty only to keep a reasonable lookout to avoid eventualities that should be anticipated by the ordinarily prudent person. (*Reich* v. *Long,* 97 Cal.App.2d 657, 660 [218 P.2d 589]; *Koon* v. *Sher,* 98 Cal.App.2d 530, 534-535 [220 P.2d 784].)

Defendant attacks the following instruction:

"A person who, himself, is exercising ordinary care has a right to assume that others, too, will perform their duty under the law, and he has a further right to rely and act on that assumption. Thus it is not negligence for such a person to fail to anticipate *injury* which can come to him only from a violation of law or duty by another. However, an exception should be noted: the rights just defined do not exist when it is reasonably apparent to one, or in the exercise of ordinary care would be apparent to him, that another is not going to perform his duty. (One is not justified in ignoring obvious danger although it is created by another's misconduct, nor is he ever excused from exercising ordinary care.)" (Italics added.) Her argument is that the italicized word "injury" should have been supplanted by the words "an accident" as recommended in the Book of California Jury Instructions— Civil (4th ed.), Number 138, page 334.[1] This borders on mere quibbling. As used in this context and in terms of the instructions as a whole, the terms are virtually interchangeable. This instruction has been approved in many cases as the embodiment of a well established principle of law. (*Cucuk* v. *Payne,* 140 Cal.App.2d 881, 891 [296 P.2d 7]; *Crowder* v. *Atchison, T. & S. F. Ry. Co.,* 117 Cal.App.2d 568, 572 [256 P.2d 85]; *Ribble* v. *Cook,* 111 Cal.App.2d 903, 908 [245 P.2d 593], citing numerous cases.) Defendant's objection that as given the instruction was applicable only to plaintiff rather than to both parties is without merit. The instruction does not reasonably bear that construction. The instruction complained of was not susceptible of limitation only to plaintiff but was applicable to both parties involved in the collision. (*LaBranch* v. *Scott,* 82 Cal.App.2d 1, 13 [185 P.2d 823].) It is noteworthy that defendant also suffered injury, namely, damage to her car, and her child was injured and required medical attention.

---

[1] It is interesting to note that in alternate instruction Number 138.1 (p. 335), which is a repetition of the first two sentences of Number 138, the word "injury" is used in place of "an accident."

■ It is asserted the court erred in giving BAJI Number 140, the so-called "looking and not seeing" instruction.[2] Defendant testified that though she observed the arm-signal she could not remember "for sure" whether there were traffic lights. There was testimony that such lights were working in good order. There was no obstruction to defendant's view. Hence, the instruction was responsive to the question of whether defendant was negligent in her attention to all the traffic controls governing the intersection. In any event, defendant could not have been prejudiced by the challenged instruction. The instruction is a mere commonplace, a truism that contributes little of any significant consequence to the understanding of any person qualified to serve as a juror. (*Powell* v. *Bartmess,* 139 Cal.App.2d 394, 406 [294 P.2d 150].) Since it is merely a statement of a self-evident proposition within the ken of any layman, it has been held that where the jury has been adequately instructed, no prejudice ordinarily results either from refusing to give the instruction (*Cooper* v. *Smith,* 209 Cal. 562, 566 [289 P. 614]; *Rickey* v. *Kardassakis,* 110 Cal.App.2d 291, 295 [242 P.2d 384]; *Schwenger* v. *Gaither,* 87 Cal.App.2d 913, 914 [198 P.2d 108]) or from giving the instruction. (*Bischell* v. *State,* 68 Cal.App.2d 557, 563 [157 P.2d 41]; *LaBranch* v. *Scott, supra* (pp. 9-10); *Collier* v. *Los Angeles Ry. Co.,* 60 Cal.App.2d 169, 175-176 [140 P.2d 206]. See *Powell* v. *Bartmess, supra.*) We fail to see how the reading of this elementary, even rudimentary, formulation of the obvious could have had any prejudicial effect on defendant's case.

■ Touching the rate of speed at which defendant's car was being driven across the intersection, the court instructed as follows: "You are instructed that you are not compelled to accept the testimony of the defendant driver as to her estimate of her speed but may consider the force of the impact as well as any other testimony or physical facts in determining whether defendant's actual speed was greatly in excess of that to which she testified." Under the evidence herein the jury, in determining the question of negligence, had a right

[2]Instruction 140 reads: "General human experience justifies the inference that when one looks in the direction of an object clearly visible, he sees it, and that when he listens, he hears that which is clearly audible. When there is evidence to the effect that one did look, but did not see that which was in plain sight, or that he listened, but did not hear that which he could have heard in the exercise of ordinary care, it follows that either some part of such evidence is untrue or the person was negligently inattentive."

to consider the speed at which defendant was operating her automobile at the time and place in question as bearing on the question whether, under the circumstances, she was operating her car in a prudent manner. The instruction correctly embodies the controlling law and is not vulnerable to the objection that it gave particular prominence to the evidence. In *Briscoe* v. *Pacific Elec. Ry. Co.*, 89 Cal.App.2d 439, 443 [200 P.2d 875], the court stated: ''The jury was not compelled to accept the estimate of the driver of the coach as to his rate of speed. It could infer from the testimony of Briscoe, that of the boy, the force of the impact and the condition of the car after the impact, that his actual speed exceeded that estimate.'' In *Finley* v. *Steiner*, 40 Cal.App.2d 331, 337 [104 P.2d 819], appears the following language: ''The trial judge was not compelled to accept defendant Steiner's estimate of his speed, but was entitled to infer from the length of the skid marks and the force of the impact, as well as the testimony of Mr. and Mrs. Jones, that his actual speed was greatly in excess of that to which he testified.'' Thus in *Douglass* v. *Crabtree*, 57 Cal.App.2d 568, 573 [134 P.2d 912], the court held it was proper to instruct that the jury might consider the length of the skid marks made by defendant's car as one of the circumstances in determining defendant's speed. The force of an impact and similar, pertinent physical facts in connection with an automobile accident are competent for the jury to consider as circumstantial indicia of speed. (*Kastel* v. *Stieber*, 215 Cal. 37, 45 [8 P.2d 474].) While not as felicitously worded as might be desired, the instruction properly directed the attention of the jury to factors it might legitimately consider on the issue of defendant's management and control of her vehicle, and we see no sound reason for complaint in the manner of its submission to them.

Lastly, defendant predicates error on the reading of the following instruction on the depreciated value of the dollar: ''You are instructed that it is a matter of common knowledge and of which you may take notice, that the purchasing power of the dollar has decreased approximately one-half of what it was prior to the present inflationary spiral, and that this factor should be taken into consideration in determining the amount of damages, if any, necessary to compensate plaintiff for the loss, if any, which he sustained as a result of the injuries, if any, which he suffered as a direct and proximate result of the defendants' negligence, providing that you find

the defendants were negligent.'' ▮ It is now well settled that the court may instruct the jury in general terms that in assessing damages it may consider the diminished purchasing power of the dollar in our contemporary economy. (*Guerra* v. *Balestrieri,* 127 Cal.App.2d 511, 520 [274 P.2d 443] ; *Gist* v. *French,* 136 Cal.App.2d 247, 274 [288 P.2d 1003] ; *Risley* v. *Lenwell,* 129 Cal.App.2d 608, 650 [277 P.2d 897] ; *Burke* v. *City & County of San Francisco,* 111 Cal.App.2d 314, 320 [244 P.2d 708].) In each of the last three cases cited, the Supreme Court denied a petition for a hearing. In *Gist* v. *French, supra,* in which the instruction told the jury that ''the value of the dollar has materially decreased,'' this court commented: ''It is plain common sense and simple honesty for a court or a jury in appraising the damages by reason of any tortious act of defendant to compute the amount of damages according to the current value of the dollar [citations].'' In *Risley* v. *Lenwell, supra,* the court held it was not error to instruct the jury that ''the purchasing power of the dollar has substantially decreased in recent years'' and that it might ''take this factor of reduced purchasing power into consideration'' in determining damages. The matter is well epitomized in *Burke* v. *City & County of San Francisco, supra,* as follows (pp. 320-321) : ''Defendant recognizes it is proper for a reviewing court to take into consideration the increase in the cost of living and the decreased purchasing power of the dollar when considering whether or not a money verdict is excessive. It claims, however, it is not legally proper to advise a jury it may take those factors into consideration. With the latter view we do not concur. If the reviewing court may consider such factors it would seem eminently fitting for the trier of facts to do so. This was indicated recently in *Kircher* v. *Atchison, T. & S. F. Ry. Co.,* 32 Cal.2d 176 [195 P.2d 427]. In considering whether or not a certain verdict was excessive, the court said: 'It is a matter of common knowledge, and of which judicial notice may be taken, that the purchasing power of the dollar has decreased to approximately one-half what it was prior to the present inflationary spiral [citations], and *the trier of the fact should take this factor into consideration in determining the amount of damages necessary to compensate an injured person for the loss sustained* as the result of the injuries suffered.' . . . When the jury is the trier of the fact, it would seem quite proper for the court to bring this factor to the attention of the jury.''

While conceding that a general instruction calling the attention of the jury to the fluctuation in value of money is proper, defendant contends that reference to a definite percentage in the instruction was objectionable and had the effect of doubling plaintiff's award. ■ As to the wording of the instruction, we agree that the instruction should have been less specific in its reference to the current value of the dollar. We do not recommend language as particularized as that here employed, which was extracted from the opinion in *Kircher* v. *Atchison, T. & S. F. Ry. Co., supra.* We are far from persuaded, however, that in this case the instruction prejudiced defendant by any tendency to increase the verdict. The award was $9,000. Plaintiff's special damages were $2,900. The balance did not exceed just compensation. Plaintiff was a young and virile man working at an occupation requiring physical exertion. His injuries were painful and apart from suffering a continuing incapacity to engage in strenuous labor, he underwent surgery for the removal of part of his ribs. The amount assessed as damages is in harmony with the realities of the present day market familiar to every layman engaged in the quotidian activities of an ordinary breadwinner or homemaker. Thus, although technically objectionable, the instruction was clearly not prejudicial, it being essentially a matter on which the jury was oriented within the framework of its own common experience. (*Estate of Nelson,* 132 Cal. 182, 193 [64 P. 294] ; *People* v. *Newcomer,* 118 Cal. 263, 269 [50 P. 405].) Clearly it did not produce a miscarriage of justice warranting a reversal. (Cal. Const. art. VI, § 4½.)

The judgment is affirmed.

Moore, P. J., and Ashburn, J., concurred.