[Civ. No. 16990. First Dist., Div. Two. Jan. 25, 1957.]

JESUS FABELA, Plaintiff and Appellant,. v. W. H. HARGIS et al., Respondents; INDUSTRIAL INDEMNITY COMPANY (a Corporation), Intervener and Appellant.

James F. Boccardo and Edward J. Niland for Plaintiff and Appellant.

Bardin, Cunningham & Leach for Intervener and Appellant.

Garth V. Lacey for Respondents.

KAUFMAN, J.—This is an appeal from a judgment in favor of defendants in an action brought by plaintiff to recover for personal injuries sustained when he fell through an open trap door in the floor of the restaurant where he was employed as dishwasher. Defendants and respondents were engaged in the plumbing business in King City, and had been called in by Mr. Keefer, the owner of Keefer's Restaurant and appellant's employer, to repair the plumbing. The trap door was opened by Glenn Monroe, one of the defendants and the agent and employee of W. H. Hargis, the other defendant.

A complaint in intervention was filed by the Industrial Indemnity Company, the workmen's compensation carrier of plaintiff's employer, charging defendants with negligence, and setting forth the payment to plaintiff by it of the sum of $9,628.47 in compensation.

The accident occurred on October 12, 1953. Glenn Monroe came to the restaurant in response to a call by Mr. Keefer, to try to find the source of an offensive odor which appellant had reported to Mr. Keefer. Monroe decided that it would be necessary to go to the basement to locate the source of the trouble. Monroe was familiar with the restaurant, having performed plumbing services there on prior occasions, and knew that the basement had to be reached by the stairs under the trap door in the restaurant floor. The trap door was situated in a small area which served both as a working space and as a passageway between the lunch room counter and rooms located toward the rear of the restaurant. The trap door, 44 inches by 30 inches, was located between a sink on one side and an ice cream freezer and work table on the other side. There was a space of about 14 inches between the doorway to the lunch room and the trap door. At the other end of the trap door there was a space of about three feet to the end of a work table and about four feet to a refrigerator. The end of the work table and the refrigerator were but 18 inches apart. In leaving the kitchen area it was necessary to make a turn of approximately 45 degrees to pass between them into the area containing the trap door.

Respondent Monroe placed a chair at the end of the trap door nearest the lunch room, because he knew the opening would constitute a hazard, and he informed the two waitresses that he was opening the stairwell. He knew that there was a cook and dishwasher on duty, but placed no chair at the other end because persons approaching the door from that side had a greater area to traverse and they would be approaching the head of the basement stairs.

Appellant was not on duty when Monroe arrived at the restaurant, but came in about 10 a. m. to transact some business with his employer, and drew an advance on his next week's pay. Monroe was then working in the basement. As appellant started to leave the restaurant, he had his money in one hand and wallet in the other. He begun to put the money in his wallet as he was walking. He entered the passageway leading to the area in which the trap door was

located. He testified that he did not know that the plumber was on the premises. He stated that on prior occasions during the six years in which he had been employed in this restaurant he had seen the trap door open, but on such occasions chairs had been placed on both sides of the opening.

As he approached the space between the refrigerator and work table, he saw Mrs. Sherman, one of the waitresses, working at the sink, which was at the opposite end of this area, near the lunch room door. He could just see her head, or a little below her head. He looked at the floor just before entering the space between table and refrigerator, but at this point could not see the area near the trap door. He had to be careful not to hit the refrigerator in passing through because of the narrowness of the space. He was still looking at his wallet, and at the same time ahead at Mrs. Sherman and toward the outside. He had nearly finished putting his money away when he fell into the opening. The last thing he saw before the accident was Mrs. Sherman. He had not seen the chair at the other end of the opening.

Until the accident occurred, Mr. Keefer had not known that Monroe had gone into the basement. He was sure that he had instructed Monroe to place chairs on each side of the opening. On prior occasions he said that Monroe had done so. The trap door area was primarily the salad room, but was regularly used by employees as a passageway between the kitchen and lunch room. Mr. Keefer testified that the salad room was well lighted by two fluorescent lights directly over the sink. The basement was lighted with a 250 or 300 watt bulb.

The waitress, Mrs. Sherman, who was working at the sink near the opposite end of the area, glanced up as she saw appellant near the refrigerator. She did not notice where he was looking, and did not notice him again until she heard the crash. His arm was bleeding, and Mr. Keefer came and rushed him to the hospital.

As a result of the accident, appellant's right arm was partially paralyzed, and his two fingers could not be straightened. He is right-handed and his grip has become too poor for employment as a dishwasher.

Appellant contends that the court committed reversible error in the giving of three instructions, the first of which given at defendants' request, is as follows:

"The plaintiff was at all times under the duty to exercise

ordinary care for his own safety, and this means that he must make reasonable and ordinary use of his eyes to see that he does not stumble or slip or be otherwise caused to fall.

"You are further instructed that the defendant had the right to rely on the plaintiff's fulfilling this duty, and to expect that the plaintiff would use his senses of sight for his own protection."

Appellant argues that this being a specific instruction, would limit the other general instructions given which purported to submit· to the jury the question of respondent's negligence. (*Nickell* v. *Rosenfield,* 82 Cal.App. 369, 377 [255 P. 760].) He says that the aforesaid instruction cannot be justified as a proper charge relating to contributory negligence and that the first paragraph imposed upon plaintiff an absolute duty to see that he did not fall, citing *Stickel* v. *San Diego Elec. Ry. Co.,* 32 Cal.2d 157, 167 [195 P.2d 416], that since he did fall, the jury could conclude that there was no negligence on the part of respondents, hence they would never reach the issue of contributory negligence. We cannot agree with appellant that the language of this instruction suggests that there is an absolute duty on appellant's part to avoid falling. The instruction plainly indicates that the duty of ordinary care requires the reasonable and ordinary use of appellant's sight to avoid dangers that may be in his path, and that respondent might rely on appellant's thus conducting himself. In *Stickel* v. *San Diego Elec. Ry. Co., supra,* the instruction given was that "It is the duty of the driver . . . to exercise ordinary care at all times to avoid placing himself or others in danger and to avoid a collision." The court stated that the instruction was susceptible to the construction that it imposed an absolute duty "to avoid a collision," since because of the structure of the sentence the qualifying words "to exercise ordinary care" might be understood to relate only to the duty "to avoid placing himself or others in danger" and not to the duty "to avoid a collision." In the present case the jury could reasonably get no other meaning from the language used but that appellant must use ordinary care for his own protection.

It is next urged that the court by instructing that an invitor has no duty to give an invitee notice of an obvious danger aggravated the error which appellant contends existed in the instruction previously discussed. We have heretofore

determined, however, that the first instruction criticized was not prejudicially erroneous. ■ The instruction attacked, given at respondents' request, reads as follows:

"Toward an invitee, he who extended the invitation, express or implied, is obliged to refrain from active negligence and to exercise ordinary care to keep the premises in a condition reasonably safe for the invitee in the reasonable pursuit of a purpose embraced within the invitation.

"But the responsibility of one having control of the premises is not absolute; it is not that of an insurer. If there is danger attending upon the entry, or upon the work which the invitee is to do on the premises, and if such danger arises from conditions not readily apparent to the senses, and if the owner (occupant) has actual knowledge of them, or if they are discoverable by him in the exercise of ordinary care, it is his duty to give reasonable warning of such danger to the invitee. The owner (occupant) is not bound to discover defects which reasonable inspection would not disclose, and is entitled to assume that the invitee will perceive that which would be obvious to him upon the ordinary use of his own senses. In brief, there is no duty to give the invitee notice of an *obvious* danger.

"In the absence of appearances that caution him, or would caution a reasonably prudent person in like position, to the contrary, the invitee has a right to assume that the premises he was invited to enter are reasonably safe for the purposes for which the invitation was extended, and to act on that assumption.

"Each, the invitee and the invitor, so long as he is exercising ordinary care and no circumstance exists that either causes him or would cause a reasonable prudent person in his position to think differently, has a right to assume that the other is or will be possessed of normal faculties of sight and hearing and will exercise ordinary care, and has the right to rely on that assumption."

The above quoted instruction is the same as B.A.J.I. 213-C, which has been given and approved by the courts of this state. (*Seedborg* v. *Lakewood Gardens etc. Assn.*, 105 Cal. App.2d 449, 456 [233 P.2d 942].)

Appellant maintains that neither the fact that a dangerous condition obviously exists nor the fact that a particular condition is obviously dangerous eliminates any duty on the part of a defendant who was responsible for the condition, and it is for the jury to determine, as a question of fact,

whether or not ordinary care required giving of some notice or warning to an invitee exposed to the condition. Appellant says that the danger here involved, an unguarded open trap door, is in one sense an obvious danger, but that it does not necessarily follow that the *existence* of such dangerous condition is obvious, since the trap door was located around the corner from appellant, in a dark colored floor, and the evidence was conflicting as to the adequacy of the lighting. Furthermore, appellant's attention was reasonably distracted by the necessity of passing through the narrow passageway, and by the presence of the waitress standing on the other side of the trap door. The instruction states that the invitor is bound to give warning of conditions not readily apparent to the senses and give reasonable warning of such danger to the invitee. Thus it was left to the jury to determine whether or not the open trap door was readily apparent to any person approaching the area from the passageway used by appellant. Under the instruction given the jury were in effect told that respondent Monroe was bound to consider whether or not the danger was readily apparent and obvious to *any* invitee who might approach from *any* of the possible entries, and not just the fact of whether or not the danger was obvious from respondent's viewpoint. It was clearly left to the jury under this instruction to determine whether because of the conditions existing in the area of the trap door, and known to respondent Monroe or discoverable by him in the exercise of reasonable care, he was bound to provide more effective notice than he had done by placing the one chair at the end of the trap door opposite the basement stairs. No case is cited by appellant where the instruction given here was criticized adversely or held to be error in this type of case.

Finally, appellant claims that prejudicial error was committed in giving the following instruction:

"General human experience justifies the inference that when one looks in the direction of an object clearly visible, he sees it, and that when he listens, he hears that which is clearly audible. When there is evidence to the effect that one did look, but did not see that which was in plain sight, or that he listened, but did not hear that which he could have heard in the exercise of ordinary care, it follows that either there is an irreconcilable conflict in such evidence or the person was negligently inattentive."

Appellant maintains that the instruction should never be given when there is a legitimate evidentiary dispute as to the visibility *to the person looking,* of the object or condition involved in the action. While superficially, appellant says, the instruction may be only an unnecessary declaration of the obvious, on careful analysis it is shown to be filled with prejudicial errors. It assumes that the object is in plain sight, for while the jury is left free to believe or disbelieve the evidence that one did look, the clear visibility of the object is taken for granted. Furthermore, a person may look *in the direction* of an object which is clearly visible to others in a different position, but because of intervening objects or distracting circumstances he may not see it.

We do not believe that the average juror would make such a refined analysis of this instruction. The first sentence stating that general human experience shows that a person looking in the direction of an object clearly visible sees it, must certainly mean to most people that the object is in such position as to be clearly visible to *him.* For general human experience does not warrant the inference that if one looks in the direction of an object visible to others, but separated from him by intervening obstacles, he sees it. And the language in the following sentence ''that which was in plain sight'' can be sensibly interpreted only as meaning that which was in plain sight of the person looking.

It is urged that the instruction concludes with only two possibilities, either that there is an irreconcilable conflict in such evidence or that the person was negligently inattentive, that it is argumentative and places the trial judge in the position of an advocate, and that it ignores the factor of ordinary care. Appellant quotes *Tuttle* v. *Crawford,* 8 Cal.2d 126, 131-132 [63 P.2d 1128], wherein the ''to look is to see'' doctrine is referred to as an *argument,* and noted that while it was applied in the cases of persons walking into moving trains and automobiles and into open elevator shafts, it could not be applied with equal force to a case where a person walked onto a discolored area of cement floor in a market, for cement was susceptible to stains and hence the discoloration held out no sign of danger. In the case now before the court, appellant did not walk into a discolored area, but into an open trap door leading to the basement stairs on premises where he had worked for six years. Furthermore, a chair stood just beyond the opening directly in the path

which he was traversing. Although appellant says that there is no evidence that he looked, and the instruction is thus inapplicable to the evidence, he testified that after he passed the refrigerator, he wasn't looking at his wallet alone, "I was looking toward the outside, too." He stated that he wasn't looking at the floor, but he was looking ahead and at his wallet at the same time.

In *Schwenger* v. *Faither,* 87 Cal.App.2d 913 [198 P.2d 108], cited by appellant, this court upheld the trial court's refusal to give such an instruction. The court held that it was not error to refuse it, quoting the following from *Cooper* v. *Smith,* 209 Cal. 562 [289 P. 614]. "The proposed instruction is a mere commonplace, within the knowledge of all the jurors, and is argumentive, rather than a statement of law." And in *Callahan* v. *Theodore,* 145 Cal.App.2d 336 [302 P.2d 333], where it was held not error to refuse a substantially similar instruction, the court referred to the instruction as a truism, and stated that it was argumentative and conducive to misunderstanding since the jury might view it as a suggestion of the court's impressions. (And, see, *Laursen* v. *Tidewater Assoc. Oil Co.,* 123 Cal.App.2d 813, 818 [268 P.2d 104].) The instruction has been approved in *LaBranch* v. *Scott,* 82 Cal.App.2d 1 [185 P.2d 823]. In *Bischell* v. *State of California,* 68 Cal.App.2d 557, 563 [157 P.2d 41], in which the Supreme Court denied a petition for hearing, the court answered some of the same objections to this instruction which appellant has made herein, but concluded that while the instruction is "not happily worded," it left the questions of fact for the jury to determine, hence there was no prejudicial error. (And, see, *Curland* v. *Los Angeles County Fair Assoc.,* 118 Cal.App.2d 691 [258 P.2d 1063] ; *Gilbert* v. *Pessin Grocery Co.,* 132 Cal.App.2d 212 [282 P.2d 148].)

In view of the determination that no prejudicial error was committed in the giving of the instruction objected to by appellant, it is unnecessary to discuss respondents' contention that the instructions were more than favorable to appellant, basing their argument on the claim that appellant was in the position of a mere licensee, and, not an invitee, in relation to respondents. Respondents apparently did not believe that the evidence as a matter of law established that appellant was not an invitee, since they offered the instruction which was given on that subject.

No prejudicial error appearing in the record before us, the judgment must be affirmed.

Judgment affirmed.

Dooling, Acting P. J., and Draper, J. pro tem.,* concurred.

A petition for a rehearing was denied February 21, 1957, and the petition of plaintiff and appellant for a hearing by the Supreme Court was denied March 20, 1957. Carter, J., was of the opinion that the petition should be granted.

*Assigned by Chairman of Judicial Council.